# FITZGERALD v. WYNNE.

POWERS; LOST OR DESTROYED WILLS; TRUSTEES; COSTS; DEEDS, ERASURES IN, RECORDATION OF.

1. In 1866 certain real estate in the District of Columbia was conveyed to a trustee, in trust for the sole use and benefit of a married woman, with power to the trustee to convey to such uses as the *cestui que use* should by deed or will appoint, and, in default of such appointment, to convey to her heirs at law. In 1886 the *cestui que use* died. Her heirs at law, in 1890, filed a bill in equity for the execution of the power and the sale of the real estate, the subject of the power. The husband of the *cestui que use*, by way of defense, asserted that his wife had made a will giving or appointing the property to him; that the will had been destroyed in the lifetime of the testatrix, and he offered to prove its execution and contents. The testimony showed that the husband had administered upon his wife's estate, and that no effort had ever been made to obtain probate of, or to otherwise establish the alleged will: *Held*, That before setting up such a will as the foundation of a right or claim, it should have been probated or other appropriate proceedings taken to establish its contents and validity.

2. In such a case, where the testimony taken wholly fails to prove the contents of the alleged will, and is very questionable as to the legal execution of the paper, the court will not direct that the bill be retained to enable the defendant to take the necessary and appropriate proceedings to have the will established and admitted to probate.

3. Strict proof is required to establish a lost or destroyed will.

4. Where it is the duty of a trustee to execute a power, it is not discretionary with him whether he will execute it or not. The principle applicable to trusts will be adopted, and his refusal, negligence, accident or other circumstances will not be permitted to disappoint the interests of those for whose benefit he was clothed with the power.

5. But, although the right of a *cestui que trust* to require a conveyance from his trustee may be quite clear in the view of the court, yet if the trustee in refusing to convey has acted *bona fide* and on apparent circumstances of doubt as to the right of the *cestui que trust* to receive the conveyance, he will not be charged with the costs of a suit brought to compel a conveyance.

6. Where a deed is executed and delivered, the interest in the property described in the deed, which thereupon passes and becomes vested in the grantee, is not divested by a subsequent unauthorized obliteration and erasure by the grantor of his signature when the deed is sent to him for correction of a supposed defect in the acknowledgment.

7. The main object of the statutes requiring deeds of conveyance to be acknowledged and recorded, is to prevent the practice of fraud upon creditors and purchasers, and to furnish means of notice and protection to innocent third parties.

8. In this District, as between the parties, the failure to record a deed does not affect its validity.

No. 47.   Submitted June 2, 1893.—Decided September 5, 1893.

Hearing on appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill for the execution of a power and the sale of certain real estate.   *Reversed.*

Statement of the case by the Chief Justice :

This is a bill filed by some of the heirs-at-law of Jane M. Keenan, deceased, for the execution of a power, and for the sale of a certain piece or parcel of ground, situate in Washington City, the subject of that power.

It appears that in December, 1866, Peter Daly and his wife conveyed, by deed of bargain and sale, for the recited consideration of $850, a certain lot or parcel of ground, situate in the city of Washington, to Thomas Wynne, his heirs and assigns, "in trust for the sole and separate use and benefit of Jane M. Keenan, the wife of Francis Keenan, and to permit her to enjoy the possession, use and profits thereof, without molestation, etc., as if she was a *feme sole* and not a *feme covert*; with full power and authority to Thomas Wynne to convey the same or any part thereof, to such person or per-

sons, and for such uses and purposes as she, the said Jane, shall direct and appoint during her lifetime, she becoming a party to, and to sign, seal and acknowledge any instrument of writing for such purpose; and also to convey the same, or such part thereof as the said Jane may be entitled to at the time of her death, as she may name in any instrument of writing in the shape of a last will or testament, and in the absence of any such will or direction, *then to convey the same to her heirs-at-law.*"

At the date of this deed, and for some time thereafter, Mrs. Keenan, with her husband, Francis Keenan, resided in Washington City, and possessed and enjoyed the property. Some time prior to the year 1886, they moved to Philadelphia, and Mrs. Keenan died there in June, 1886, her husband surviving her, and who is a party defendant to this bill. She left no child or descendants, but she left surviving her a brother and sister, and children of a deceased brother, and children of a deceased sister, and two grandnieces, grandchildren of another deceased sister, as her heirs-at-law. She did not appoint any use to which she desired the property to be conveyed in her lifetime; and whether she made an appointment by will is one of the questions raised in this case. It appears that administration upon her estate was obtained by her husband, Francis Keenan, in the city of Philadelphia, and such administration has been completed and closed. It also appears that several of the parties, heirs-at-law of Jane Keenan, have assigned or conveyed their interest in the property that was subject to the power in the deed to Wynne, the trustee, to Francis Keenan, the surviving husband of Jane Keenan.

The bill was filed by the surviving brother, John Fitzgerald, and the five children of the deceased brother, Patrick Fitzgerald, as complainants, against the surviving husband, Francis Keenan, Wynne, the trustee, the surviving sister of the deceased, and the children of one of the deceased sisters, and the two infant grandchildren of another deceased sister—these two infant defendants being children of Mary Gallagher,

deceased. The object of the bill would seem to be to require the trustee, Wynne, to execute the power of conveyance to the heirs-at-law of Jane Keenan; to have partition of the estate, and to that end, to have the property sold; and to obtain from the trustee, and the surviving husband, an account of rents and profits received, etc.

Wynne, the trustee, in his answer, admits that he had been in the possession of the property, managing and controlling it, since the death of Mrs. Keenan, and that he had received the rents and profits thereof, some part of which he had paid over to Francis Keenan, because he had understood that Mrs. Keenan had made a will and devised the property to her husband. He also avers that some of the heirs-at-law of Jane Keenan had made a deed or deeds to Francis Keenan of their interests in the property; that John Fitzgerald, one of the complainants, and Mary Gallagher, since deceased, a niece of Jane Keenan, had joined in such deed, which was duly executed and delivered, but because of a supposed defect in the acknowledgment and the certificate as to the official character of the officers taking the acknowledgments in the State of Connecticut, where the deed was executed, the same was not recorded, but was returned to the grantors solely for the purpose of having the supposed defects rectified; but instead of having the supposed defects corrected, as was intended, John Fitzgerald and Mary Gallagher wrongfully erased their names or signatures from the deed and returned it in that condition; and consequently the deed has not been recorded. He therefore insists that it was not his duty, under the circumstances, to execute the power by making the conveyance of the property to the heirs-at-law of Jane Keenan.

In the answer of Francis Keenan, he avers that the complainants have no right to the relief prayed by them. That Jane Keenan made a will whereby she devised the property to him; that such will was left in the custody of Theresa McLaughlin, a niece of the deceased, for safe keeping, and that through carelessness of said niece, the will was de-

stroyed; so that the defendant cannot produce the will, but that he is able and willing to prove the due execution and contents thereof. He avers that some of the heirs-at-law of his deceased wife have by deed, quit claimed and conveyed their interests in the property to him; and that the complainant, John Fitzgerald, and Mary Gallagher, in her lifetime, joined in such deed, for good and valuable consideration; and though such deed was duly executed and delivered as the deed of the parties grantors therein, yet upon the return of such deed for the correction of a supposed defect in the acknowledgment thereof, and for no other purpose, the said John Fitzgerald and Mary Gallagher wrongfully erased their signatures from the deed, and returned it in that condition; and the said deed has not been recorded. The defendant, however, insists that the deed, having been executed and delivered as the deed of the parties, is binding and effective, and that neither the said John Fitzgerald, nor the two infant defendants, children of Mary Gallagher, can deny the validity of said deed, and that the complainant, John Fitzgerald, has no right or interest in the property, as one of the heirs-at-law of Jane Keenan, to entitle him to maintain this bill.

A decree *pro confesso* was taken against some of the defendants, and the two infant defendants answered by guardian. And after testimony taken and hearing had, the bill was decreed to be dismissed, from which decree an appeal was taken to the general term of the Supreme Court of the District, from whence it has been transferred to this court.

*Mr. J. H. Lichliter* and *Mrs. E. S. Mussey* for the appellants; *Mr. Edward Otis Hinkley* was with them on the brief:

1. In a suit brought to obtain the execution of a trust and partition of property, a will which has not been probated cannot be established so as to defeat the claims or interests of the heirs-at-law of the deceased. The cases found in the reports and discussed in text-books, where lost or destroyed wills have been established, are cases for the probate of the

wills or specifically brought to establish the wills. The case at bar is not of this character. The defendant Keenan does not show any attempt, at any time, or in any court, to probate or establish the alleged will. This is not the forum, nor is this a proper case, to establish the alleged will. The defendant must assert and establish his title, if any, by action at law, or by affirmatively seeking relief by proper bill in equity. Maryland Act of 1798, Ch. 101; Act of Congress, July 9th, 1888, Ch. 597; 56 Maryland, 560; 1 Phillimore, 14 Maryland, 532; 2 Howard, 619; 1 Probate Div., 154 (English Court of Appeals), in 1876; 32 Maryland, 16; 8 G. & J., 391; 30 Maryland, 411; *McDaniel* v. *Pattison*, 27 Pacific Rep.

2. To defeat the interests of heirs at law by a will, it is required that the will be established and proven by the clearest, most conclusive and satisfactory testimony, both as to execution and contents. *Hale* v. *Monroe*, 28 Md., 113; *Rhodes* v. *Vinson*, 9 Gill, 171; *Davis* v. *Sigourney*, 8 Metcalf, 487; *In re Johnson's Will*, 40 Conn., 589. The testimony in the case at bar does not show the contents of the alleged will with that certainty which would enable any court to pronounce in favor of it.

3. In order to pass real estate situated in the District of Columbia, a will must be executed as provided by the laws in force there, and its validity must be established in the manner provided by those laws. *Robertson* v. *Pickrell*, 109 U. S., 608. See Thomp. Dig. 345.

In the District a will must be signed; it must be attested and subscribed in the presence of the devisor by at least three witnesses; and the execution must be proven by the *three* subscribing witnesses, or, if they be not living, by proof of their hand-writing. Id.; *Rutherford* v. *Rutherford*, 1 Denio, 33.

4. The alleged deed from John Fitzgerald and Mary Gallagher to Francis Keenan was not completed and delivered, and therefore had no force as a deed. The law of the District of Columbia specifically provides by what officers an

acknowledgment of a deed may be taken, and how such acknowledgment shall be certified. Without strict compliance with this law a deed is not complete. The alleged deed from John Fitzgerald did not meet the requirements of the law. *Chafee* v. *Blatchford*, 6 Mackey, 480-1.

5. If the alleged deed was a deed delivered it was invalid because of fraud and want of consideration, and upon its return to two of the grantors for completion they revoked it. Thus the deed, as to these grantors, has no existence in law. It could only be established by a special proceeding in equity, which would be open to equitable defenses.

6. Five of the complainants were not parties to the alleged deed, and their interests in the property are not affected by the deed, if held valid, and therefore they are entitled to the relief prayed.

*Mr. James Fullerton* for the appellees:

1. The testimony in relation to the destroyed will of Jane Keenan shows; that the testatrix devised " to her husband, Francis Keenan, the house and ground in Washington"; that she " left the place in Washington to Frank, as she thought he had the best right to it "; that the will was handed by the testatrix to her niece, who read it and whose brother read it; that the will was written by the testatrix who " wrote readily and easily "; that the will was signed by the testatrix and witnessed at her request by three or more persons; that she never revoked it and never knew that it had been destroyed; and that the testatrix admitted to her sister that she had made a will. All of the heirs-at-law, except the complainants, conceded the fact of the execution and the validity of the will, and recognized the justice and propriety of the devise to the husband of the Washington property, which had been purchased with the proceeds of his own labor. Mary Gallagher accepted a bequest of $200 under the will, and united in a conveyance intended to perfect the defendant Keenan's title. The will was destroyed without the direction, consent or knowledge of the testatrix, by its custodian, under

the mistaken impression that it was only a conditional will. The defendant husband administered upon the savings which his wife had made of his own earnings, and paid all the bequests which he was told she had made by the destroyed will. The due execution of the will and its destruction without the knowledge or consent of the testatrix being established, its contents may be shown by parol, and the proof of loss being addressed to the court, need not be as strict and technical as when submitted to a jury. *Fetherly* v. *Waggoner*, 11 Wend., 599; *Idler* v. *Bowen*, 11 Wend., 227, and citations; *Wilmot* v. *Talbot*, 3 H. & McH., 2; *Tarver* v. *Tarver*, 9 Peters, 174; *Gaines* v. *Hennen*, 26 How., 553. Though the testimony does not show that a fee was devised in express and technical terms, it is manifest that the testatrix intended to recognize the just claim of her husband to the property which had been acquired by his labor. She declared that " he had the best right to it." The provisions made for others of her kin negative the idea that she intended them to share in it. In wills, the rule that words of inheritance are necessary to convey a fee is entirely subordinate to the testator's intention. The deed of trust to Wynne directs that he shall convey what " said Jane may be entitled to at the time of her death as she may name in any instrument of writing in the shape of a last will or testament." *Smith* v. *Shriver*, 3 Wallace, Jr., 219; *King* v. *Ackerman*, 2 Black, 408; *Lambert* v. *Paine*, 3 Cranch, 97; *Smith* v. *Bell*, 6 Peters, 68.

2. The execution and delivery of the deed from John Fitzgerald and Mary Gallagher to Francis Keenan are proved and admitted; and, as between the parties, are conclusive. An unconditional delivery of a deed fairly made cannot be rovoked by any act of the party executing it. *Woodman* v. *Coolbrooth*, 7 Greene, 181; *Frisbie* v. *McCarty*, 1 Stew. & Port., 61. The cancellation of a deed will not divest property which has once vested by transmutation of possession. *Marshall* v. *Fisk*, 6 Mass., 32; *Bottsford* v. *Moorehouse*, 4 Conn., 550; *Holbrook* v. *Tirrell*, 9 Pick., 105; *Hatch* v.

*Hatch,* 9 Pick., 311 ; *Dando* v. *Tremper,* 2 Johns., 87 ; *Lewis* v. *Payne,* 8 Cow., 75. A deed is not avoided by the seal being torn off by the grantor, or by a third person, with his consent. *Cutts* v. *U. S.,* 1 Gall., 69 ; *Turner* v. *Ogden,* 1 Black., 450 ; *Suydam* v. *Beals,* 4 McLean, 12 ; Taylor L. & T., § 511, p. 359 and cases cited. A deed is valid at common law between the parties, if signed, sealed and delivered, though not witnessed, acknowledged, or recorded. *Goodenough* v. *Warren,* 5 Saw., 494, 498 ; *Wood* v. *Owings,* 1 Cr., 239.

The Chief Justice delivered the opinion of the Court :

If it be true, as averred in the answer of Francis Keenan, that Jane Keenan made and executed a valid will or testament, wherein she executed the power of appointment given her by the deed of trust to Wynne, and that such will was never revoked, cancelled, burnt, or otherwise destroyed by the testatrix herself, or in her presence, or by her direction and consent, and such will be established by competent evidence, clearly the complainants in this case would have no right to maintain this bill. But the alleged will has not been produced, and the excuse for non-production is, that it was destroyed in the lifetime of the testatrix, by being carelessly burnt by the custodian thereof, after it had been offered to be returned to the testatrix, and she had failed or declined to take charge of it. It is said that the will was made just before Mrs. Keenan started on a journey to Ireland; but it is somewhat singular that after her return she manifested no care or concern in regard to it, and it was after her return, and after showing indifference to it when it was offered to be surrendered to her, that her niece, supposing the paper to be no longer of importance, destroyed it by burning, according to the testimony of the niece.

But, however the fact may be in regard to the making of the will, or the destruction of it, Mrs. Keenan died in June, 1886, and down to the present time, no effort has been made to prove the due execution and the contents of the will, and

to have it admitted to probate, according to law. Instead of taking the proper proceedings to establish the will, the husband, the alleged principal beneficiary thereunder, applied for and obtained letters of administration upon the estate of his wife, which could only have been had upon the supposition that the deceased died intestate. If the will alleged had been properly made, but illegally and without the consent of the testatrix destroyed, the law provides ample means by which it could have been established, to give effect to its provisions. The fact that the will had been illegally destroyed or lost did not, by any means, preclude the beneficiaries thereunder from taking proceedings and having the will established and admitted to probate, on due proof. *Sugden* v. *Lord St. Leonards*, 1 Prob. Div., 154. But such proceedings should have been taken as preliminary to setting up the will as the foundation of a right or claim to an estate in a litigation *inter partes*. For, as said by the Supreme Court, in the case of *Ellis* v. *Davis*, 109 U. S., 497: "The original probate, of course, is mere matter of State regulation, and depends entirely upon the local law; for it is that law which confers the power of making wills, and prescribes the conditions upon which alone they may take effect; and as, by the law in almost all the States, no instrument can be effective as a will until proved, no rights in relation to it, capable of being contested between parties, can arise until preliminary probate has been first made." This, as we have seen, is not a proceeding for the establishment of the will. If Mrs. Keenan made a will and left it uncancelled or unrevoked, and the party claiming under it intended to make it a muniment of title and a medium of evidence, he should, by petition, have invoked the probate jurisdiction of the Supreme Court of this District, and offered to prove the due execution and contents of the alleged destroyed will, and have the same, upon proof, admitted to probate. This could have been done under the act of Congress of July 9, 1888, ch. 597, 25 Stats., 246, which provides that the record of any will or codicil admitted to probate by the Supreme Court of the District of Columbia, etc.,

" shall be *prima facie* evidence of the contents and due execution of such wills and codicils." That statute was passed, as we may suppose, in view of the then recent decision of the Supreme Court of the United States in the case of *Robertson* v. *Pickrell*, 109 U. S., 608, and to correct what was made to appear in that decision as a defective state of the law in this District, in relation to the probate of wills as affecting the titles to real property. The appropriate mode of proceeding for probate in such case as this would have been that provided for by sections 16 and 17 of the Maryland act of 1798, ch. 101, subch. 15, in force in this District. Or, if preferred, the party interested in establishing the will, as against the heirs-at-law of Mrs. Keenan, inasmuch as the estate in question is merely equitable, and consequently no action at law could be maintained, could have brought a bill in equity to establish the will, so far as it affected the real estate in question. In such case, the jurisdiction of a court of equity is well settled; and the appropriate mode of proceeding, and especially where the will is alleged to have been lost or destroyed, is for the court to direct an issue of *devisavit vel non*, to determine the facts of the making, contents, and validity of the will. *Bootle* v. *Blundell*, 19 Ves., 501, 502; *Tatham* v. *Wright*, 2 Russ. & M., 1, 10; 2 Sto. Eq. Jur., Sec. 1447; *Boyse* v. *Rossborough*, 6 Ho. L. Cas., 2, 37; *Ellis* v. *Davis*, 109 U. S., 495.

Here, however, neither of these modes of proceeding has been resorted to; but the party simply avers in his answer by way of defense, that a will had been made, in which the property had been given or appointed to him, and that the paper had been destroyed in the lifetime of the testatrix; and he offers to prove the execution and contents of such will. If the proof in the case was at all clear as to the making and contents of the will, and that it was destroyed without the knowledge and consent of Mrs. Keenan, it would, perhaps, be a proper thing to do, to direct that the bill be retained to enable the defendant to take the necessary and appropriate proceedings to have the will established and admitted to pro-

bate. But, upon the testimony before us, that would appear to be useless, and could only be productive of delay and onerous costs to the parties. The testimony wholly fails to prove the contents of the alleged will, and is very questionable as to the legal execution of the paper. It is true, one witness says she read the will, and another that he either read or heard it read, and that the property in question was given to the defendant, Francis Keenan. But how given— whether in fee, or for life, or on condition, or with qualification; or whether the devise made special reference to the power in the deed, or to the property the subject of the power, or was a general devise of all her real estate—does not appear. The statements of the witnesses are at most nothing more than their conclusions as to the construction of the paper; they do not pretend to give the particular terms of the will, or even the substance of what was written on the paper. This, according to all authority, is clearly insufficient. No subject could require greater caution on the part of the court than that of acting on proof offered to establish a lost or destroyed will, nor demand of the parties attempting to establish such lost or destroyed papers more certain and definite proof. The will must be shown to have been irretrievably lost or destroyed, and that it had been duly and properly executed and attested; and that its destruction, if in the lifetime of the testator, was wholly without his knowledge or consent, at the time, or his subsequent ratification. If this be clearly shown, and the substance of the will be distinctly and definitely ascertained, either by the original instructions, or by a copy of the will, or even by the recollection of witnesses who have read, or heard read, the paper, it is settled, the court will grant probate of a copy embodying such substance. But in all such cases, it is laid down with emphasis, that the jurisdiction of the court should be exercised with the greatest possible caution, " and that the judge will scarcely feel justified in acting on the evidence unless it be of the most cogent and irrefragable character, not only free from suspicion in its source, but exact and certain in its

conclusions." 2 Taylor, Ev., Sec. 406, and cases there cited; also *Sugden* v. *Lord St. Leonards*, 1 Prob. Div., 154, 177, 220, 222, 232, and 236. The testimony here falls far short of this standard, and supposing it to be all that is within the reach of the defendant, it would be quite futile to attempt to establish the alleged will on the strength of it.

Seeing then, that there has been no appointment by will or testament of Mrs. Keenan under the power in the deed, the case is clearly within the jurisdiction of a court of equity to enforce the execution of the power to convey by the trustee. The power is not a discretionary one, but is in its terms and nature imperative upon the trustee, and therefore must be executed. For it is settled doctrine, that where the power is one which it is the duty of the trustee to execute, he becomes a trustee for the exercise of the power, and not as one having a discretion, whether he will exercise it or not, and the court adopts the principle as to trusts, and will not permit his refusal, negligence, accident, or other circumstances, to disappoint the interest of those for whose benefit he was clothed with the power. *Brown* v. *Higgs*, 8 Ves., 570, 574; *Mott* v. *Buxton*, 7 Ves., 201; 1 Perry on Trusts, Sec. 248, and cases cited. But, although the right of the *cestuis que trust* to require a conveyance from the trustee may be quite clear in the view of the court, yet if the trustee in refusing to convey, has acted *bona fide* and on apparent circumstances of doubt as to the right of the *cestuis que trust* to receive the conveyance, he will not be charged with the costs of the suit. *Angier* v. *Stannard*, 3 M. & K., 566; *Knight* v. *Martin*, 1 R. & M., 70; Hill on Trustees, 393. And that would appear to have been the predicament of the trustee here.

Then, with respect to the deed, and the effect thereof, from the complainant, John Fitzgerald, and Mary Gallagher, to the defendant, Francis Keenan. That deed was not acknowledged in proper form by John Fitzgerald, as required by the registry law of this District, nor was the official character of the officers taking the acknowledgments in the State of

Connecticut duly certified, and the deed has not been re-corded. The signatures of the grantors· were erased there-from after the deed had been *delivered* to the grantee, and without his knowledge or consent, though the deed had been returned to the grantors for the correction of the defective acknowledgment, and for that purpose only. The question is, was the deed, and the effect thereof, destroyed by this act of erasure or obliteration by the grantors, under the circum-stances of the case?

It is certainly a general rule, that where a party makes a perfect deed of conveyance of an estate in land, that is to say, where he *executes and delivers* a deed of conveyance *as his final act*, the estate in the property, if equitable, at once passes to the grantee, equally as it would on a conveyance of a legal estate, unless the operation of the deed be re-strained by statute. The grantor cannot revoke such deed, unless he has reserved to himself a power of revocation. And where such deed has been destroyed, by the grantor, after delivery to the grantee, secondary evidence of its con-tents may be given, and the deed set up against the grantor and his heirs and devisees, and against volunteers claiming under him. Here, the conveyance of the equitable interest was in the form of a deed of bargain and sale, for the nominal consideration recited of five dollars, and the deed contained covenants for general warranty and for further assurance. But any conveyance of the equitable interest by the *cestui que trust* would have the same effect and operation upon the trust as it would have had upon the legal estate, in case the trustee had executed the power by conveying the estate to the heirs. The deed here was executed and delivered as the final act of the grantors, and the equitable interest in the property thereupon passed and became vested in the grantee, and that interest was not divested by the subsequent unau-thorized obliteration or erasure of the signatures of the grantors from the deed. 2 Spence Eq. Jur., pp. 881-883.

It has, however, been urged in argument, that because the registry laws of this District have not been complied with,

and the deed has not been recorded, therefore, it can have no operation or effect in passing the interest of the grantors. But that does not follow the failure to record the deed, as between the parties thereto. The great object of the statutes in requiring deeds of conveyance to be acknowledged and recorded is to prevent the practice of fraud upon creditors and purchasers; to furnish the means of notice and protection to innocent third parties. It never has been held, says Chancellor Bland, " that those laws altered any principle of the common law, or required anything in addition to the common law solemnities as a necessary constituent of a deed, as between the parties to it. Hence, a deed of this kind (a mortgage), as between the parties themselves, has always been deemed as valid and effectual without recording as with it." *Salmon* v. *Clagett*, 3 Bland Chan., 172, and same case affirmed on appeal in 5 Gill & John., 314, 346. And Professor Washburn, in his valuable work on Real Property, after reviewing all the American cases upon the subject, concludes by saying: " It may, therefore, be stated in general and nearly unqualified terms, that between the parties to the deed, or the heirs or devisees of the grantor and the grantee, and those claiming under him, the validity of the deed is not affected by the want of record. And that the same is true as to all purchasers who may take a subsequent deed, knowing of the existence of the prior one." 3 Washb. on Real Prop., 283. Of course, if the statute declared that no deed affecting the title to real estate should have any effect or operation unless duly acknowledged and recorded, in the manner prescribed, the deed in this case would fail of effect and convey no interest in the property. But the statute makes no such declaration, and leaves the conveyance to operate as between the parties to it, irrespective of the provisions for acknowledgments and recording. It simply provides that all deeds, or other instruments of writing, which by law are entitled to be recorded in the office of the recorder of deeds, " shall take effect, and be valid, *as to creditors* and *as to subsequent purchasers* for valuable consideration without notice, from the

time when such deed, deed of trust, etc., shall, after having been acknowledged, proved or certified, as the case may be, be delivered to the recorder of deeds for record, and from that time only." Act of Congress, relating to the District of Columbia, of April 29, 1878, ch. 69, 20 Stats., 39. There is nothing in this provision, certainly, that restrains the common law effect and operation of the deed from the time of its execution and delivery, as between the parties themselves.

It follows that John Fitzgerald, one of the complainants, has no interest to entitle him to maintain this bill; and that the two infant defendants, children of Mary Gallagher, deceased, are also without interest. But the other five complainants, children of Patrick Fitzgerald, deceased, are entitled to relief; and we shall, therefore, reverse the decree of the court below, and remand the cause, with direction that the bill be dismissed so far as John Fitzgerald is concerned, but retained as to the other complainants; and that they are entitled to a decree for the sale of the property, and to have the proceeds of the sale distributed among the parties, according to their respective interests therein; and to a decree for an account of the rents and profits, as prayed. And as the trustee, Wynne, holds the legal title to the property, he should be required to join in the conveyance to the purchaser under the decree. The costs shall be paid, the one-half by John Fitzgerald, and the other half out of the fund arising from the sale of the property.

*Decree reversed, and cause remanded for a decree in accordance with the foregoing opinion.*