## HAYWARD *v.* MAYSE.

ABSOLUTE DEED, INTENDED AS A MORTGAGE ; NOTICE OF OWNERSHIP OF LAND.

1. It is incumbent upon one who claims a deed, absolute on its face, to have been intended as a mortgage, so to show by ample and satisfactory evidence ; it will not be sufficient to throw doubt upon the matter or to raise suspicion as to the character of the transaction.
2. The possession that is required to put a purchaser of real estate upon inquiry as to its true ownership, must be open, distinct and unequivocal.

No. 43. Submitted June 9, 1893.—Decided September 5, 1893.

HEARING on appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill of complaint. *Affirmed.*

STATEMENT of the case by Mr. Justice MORRIS:

This is a suit to have a deed absolute on its face decreed to be a mortgage; to have a conveyance made by the grantee in the deed declared void, and for a settlement of the rights of the parties in the premises.

The complainant Hayward was the owner of two lots of ground numbered sixty (60) and sixty-one (61) in S. P. Brown's subdivision of Pleasant Plains, or Mount Pleasant, adjoining the city of Washington to the north. Here he had built for himself a peculiar structure in the trees, consisting mainly of an elevated platform, on which he erected a tent; and the name of Airy Castle was given to the place. In this

he resided occasionally, and occasionally he appears to have rented it for entertainments. In the year 1887, he executed a mortgage or deed of trust of the property to secure to Miss Simms a loan of $3,000 made to him, and which seems to have been payable in three years from that time. About a year afterwards, on September 25, 1888, he executed a second mortgage or deed of trust to secure a loan for $1,500 made to him by the defendant, William Mayse, or through said defendant by one Orme, which was payable two years thereafter.

Being in need of more money for some purpose only obscurely disclosed in the record, Hayward, on January 3, 1889, sought a loan of $500 from Mayse. The transaction, however, resulted in a deed of conveyance of the property by the complainant to Mayse, or rather a conveyance of the equity of redemption, for the sum of $500, which was paid. Hayward claims that this deed of conveyance, although an absolute conveyance in fee simple, was intended only as a mortgage to secure a loan of $500. Mayse claims that it was in reality what it purported to be, an absolute purchase by him of the property for $5,000, being $500 in cash and the assumption by him of the incumbrances then on the property, amounting to $4,500.

The complainant claims that, contemporaneously with the execution of this deed, which was on January 5, 1889, there was a verbal agreement between him and Mayse, that Mayse "would protect the complainant's interests" in the premises, and "that he, the said Mayse, would and should hold such conveyance merely as a mortgage to secure to him the repayment of such advances when complainant should be able to redeem the property or should find a purchaser who would take the property and pay therefor a fair and reasonable price." The defendant, Mayse, on the other hand, claims that, while the sale was a *bona fide* and absolute sale to him, he took the property only to secure the mortgage for $1,500, on which he or his firm were guarantors; that he did not desire to retain it; and that he agreed with Hayward that if

the latter would use his efforts to sell the property, he might have as commission for his services all over and above the amount for which he (Mayse) took it.

Hayward claims to have remained in possession of the property after the execution of the deed, still claiming the property as his own. Mayse maintains that he remained as tenant, paying rent for the premises, or at all events under an agreement to pay rent. The character and extent of the complainant's possession or occupation are exceedingly obscure and doubtful.

Mayse held the property for about eighteen months. During this time, several written communications passed between him and the complainant, in which Mayse seems to have acknowledged in the complainant a subsisting interest in the property incompatible with the absolute ownership of it by him under his deed. During the same period, payments were occasionally made, or agreed to be made—for they seem to have generally taken the shape of promissory notes by Hayward to Mayse, claimed by the former to have been as interest on his indebtedness, by the latter as rental for the property. Mayse himself admits, however, that only a small part of the sum was for rental, the residue being for interest on the money advanced.

Subsequently, on June 26, 1890, after notice to the complainant, the defendant Mayse sold and conveyed the property to the defendant, Benjamin W. Holman, as trustee for a combination or syndicate of fourteen persons, for the sum of about $6,000.

On July 7, 1890, the complainant filed the bill in this case, in which he advanced the claim that his deed to Mayse was intended only as a mortgage; that the property was worth $8,000 or $10,000; that Mayse and Holman had conspired to defraud him of his rights; that Mayse continued to be interested in the property; and that Holman had purchased with full notice of his (the complainant's) rights, and in derogation of them. And the prayer of the bill, besides an injunction *pendente lite*, was that the deed from Mayse to Holman

should be declared fraudulent and void; and that an account might be settled between the complainant and the defendant Mayse, and the just amount of the complainant's indebtedness ascertained, " so that complainant might be protected in his rights and fairly and equitably redeem the said property under and in accordance with the agreement and understanding between him and said Mayse, or that the court would intervene in the premises between the said parties and provide for the due and just protection of their respective interests, with such other and further relief as to the court might seem equitable and necessary."

The defendants answered. The defendant Mayse denied the existence of any such agreement as was claimed by the complainant, and stated his view of the matter as hereinbefore set forth. The defendant Holman denied the conspiracy to defraud with which he was charged; denied that he had any notice whatever of any pretended rights of the complainant; and denied that Mayse retained any interest under the deed made by the latter to him.

Testimony was taken on both sides. On the hearing of the case, the complainant's bill was dismissed; and from the decree of dismissal the present appeal has been taken.

*Mr. William A. Meloy* for the appellant:

1. The deed from Hayward to Mayse was a mere mortgage security for repayment of the $500 loan and any further sums the latter might advance in payment of interest accruing on the $3,000 and the $1,500 loans, to protect the property while Hayward was finding a satisfactory purchaser. Parol evidence is admissible to show that a deed absolute on its fact was in fact a mortgage. 4 Kent's Com., *142; 3 Iowa, 37; *Hall* v. *Saville*; 14 Wend., 66; *Walton* v. *Cranly*, 2 Ves., 225; 1 J. Ch. R., 594; 2 ib., 189 ; 4 ib., 167 ; 2 Cow., 247-324; 1 Mon., 73; 1 Paige, 48; 8 Wend., 641.

2. Hayward remained in the exclusive and notorious possession of the property, dealing with it as one owning it, and not as a tenant; doing work and making expenditures, visibly

and clearly of no value in respect to a tenancy, but only in respect to an ownership. Such deed will be held a mortgage and no more, between the parties thereto, their privies in estate, and all others affected by notice, such as men act upon in the ordinary affairs of life. 3 Iowa, 37; *Hall* v. *Saville*; 4 Kent's Com., *171, n. 1 and n. (a), *179 and citations; 3 Metc., 405, *Curtis* v. *Mundy*; 9 Wend., 227, 232; 15 J. R., 205; 18 ib., 173; Story's Eq. Jur., Sec. 397; 16 Ves., 249, *Daniel* v. *Davidson.* Open, notorious and exclusive possession of the premises puts the opposite party on inquiry. *U. S.* v. *Hughes,* 4 Wall., 232. Until such inquiry is made it is full notice to a purchaser of the possessor's interest in the property, whatever that interest may be, and he is bound to inform himself. Cf. cases before cited, and also Sugden on Vendors and Purchasers, 7th ed., ch. 17, pp. 74, 75, 76; 4 Scam., 147; 17 Ves., 293, *Attorney-General* v. *Backhouse*; *Pritchard* v. *Brown,* 4 N. H., 405. In States where cases have been decided apparently to the contrary it has been under statute law, because the legislature had intervened to change the common law rule by artificial enactment, as to modes of evidence; as, particularly, in the States of Indiana and Massachusetts. Cf. 1 R. S. Ind. (of 1876), p. 365; 5 Pick., 450.

*Mr. James F. Hood* and *Mr. Mills Dean* for the appellees :

1. The testimony fairly, if not overwhelmingly, shows that the transaction of January 5, 1889, was what it purported to be, a *bona fide* sale. It was not even a sale with a power of repurchase, but an out and out sale, and for a consideration which was more than the full value of the land at the time of the transfer. The only testimony tending to show that the deed was intended as a security for a debt and not a sale is that of the appellant. He is contradicted by Mayse; and the consideration being not only fair, but the full value of the land, and the presumption being that the transaction is what it purports to be, the complainant's testimony has not overcome this presumption. See 3 Pomeroy on Equity, Sec.

1196, and cases cited; *Coyle* v. *Davis*, 116 U. S., 112 ; *Howland* v. *Blake*, 97 U. S., 624; *Codman* v. *Peter*, 118 U. S., 73.

2. The appellee, Holman, was a *bona fide* purchaser for a valuable consideration, and without notice. The deed from Hayward to Mayse was of record, and because of said deed he purchased the property, knowing nothing whatever of Hayward or his claim. The possession of appellant was not such as would be required to put a purchaser on inquiry as to his (appellant's) claims, if he had any. Possession to be constructive notice, in any case must be actual, open and notorious. See Wade on Notice, Sec. 288. By his own act of executing and delivering a recordable deed in fee Hayward is estopped to rely upon his possession, however actual, open, and notorious as notice of the alleged understanding between himself and defendant Mayse. See Wade on Notice, Sec. 299, and cases cited; *Scott* v. *Gallagher*, 14 S. and R., 333. A *bona fide* purchaser from the grantee of a deed absolute on its face, not knowing it to be a mortgage, would hold the estate by an absolute title. 2 Washburn on Real Property, 54; *Connor* v. *Chase*, 15 Vt., 764.

Mr. Justice MORRIS delivered the opinion of the Court:

That a deed absolute on its face will be held to be a mortgage, whenever it is shown by satisfactory proof to have been so intended by the parties at the time of its execution, is a principle of equity almost elementary in its character. It is equally well settled that parol evidence is admissible to show the nature and character of the transaction for which the deed was executed. *Peugh* v. *Davis*, 96 U. S., 332.

It is also well settled law that parties affected with notice, either actual or constructive, cannot acquire any greater or better rights than those of their grantors. *Wilson* v. *Wall*, 6 Wallace, 83 ; *Hughes* v. *United States*, 4 Wall., 232.

The grantee of a deed is entitled to rely upon the letter of his grant; and it is incumbent upon him who claims a deed absolute on its face to have been intended as a mortgage, so

to show by ample and satisfactory evidence. It will not be sufficient to throw doubt upon the matter, or to raise suspicion as to the character of the transaction. There must be ample and satisfactory proof. It will not do to allow such solemn acts as deeds of conveyance to be overthrown by mere suspicion. There must be some security for titles; and it ought not to be allowed to assail them by mere suspicion.

Undoubtedly, there is ground in the present case to suspect that a mortgage was intended between the complainant and the defendant Mayse; and the strongest ground for the suspicion is found in the written communications that passed between the two after the execution of the deed. But after all, these raise nothing but suspicion. They are consistent with the theory of the defendant that a sale with the right of repurchase was intended, or a sale with a power to procure a resale and to become entitled to commissions. The theory upon which the monthly rental of $30 was based was also calculated to excite suspicion, as tending to show that there was a continuing mortgage. But at the same time it is not inconsistent with the idea that the interest of the money which he had expended in the purchase should constitute the basis of calculation for rental value. The ground for suspicion in the case is abundant; and yet we fail to find anywhere the ample and satisfactory proof which alone would justify us in holding this absolute deed to have been intended as a mortgage. And in the absence of such proof, we must leave the parties in the situation in which they have placed themselves. When parties have recourse to the dangerous expedient of delivering an absolute deed for the purposes of a mortgage, they have only themselves to blame if they fail to secure the simple but satisfactory proof that is required to demonstrate the fact in the event of subsequent controversy in regard to it.

Gross inadequacy of price is relied on by the complainant as tending to prove his theory of a mortgage. We fail to find any proof of such gross inadequacy. The property

was greatly within the range of speculative values. Some witnesses testify that it ought to have brought more money; others say that the price paid was ample, and even more than it was worth. It does not appear that it was fairly and reasonably worth much in excess of the price paid for it by Mayse at the time of the conveyance to him. At all events, there was no such gross inadequacy of price as would convert this deed into a mortgage.

Thus far we have considered the case as between the complainant and the defendant Mayse. But even if we assume that as between these two the transaction was a mortgage, we do not think that the rights of the defendant Holman should thereby be prejudiced.

The charge against Holman of conspiracy to defraud is utterly unsustained by proof of any kind, and is unjustified by the circumstances. The charge that Mayse remained interested in the property after his conveyance to Holman, is also shown to have been absolutely without foundation. It seems to be conceded, too, that Holman had no actual notice of any rights or claims of the complainant. But it is sought to charge him with notice by a show of continued possession of the premises by Hayward after his apparent sale to the defendant Mayse. We do not find any satisfactory proof of such notice.

In the case of *Townsend* v. *Little*, 109 U. S., 504, the Supreme Court of the United States said:

" Constructive notice is defined to be in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. When possession is relied on as giving constructive notice, it must be open and unambiguous, and not liable to be misunderstood or misconstrued. It must be sufficiently distinct and unequivocal, so as to put the purchaser on his guard. As said by Strong, J., in *Meehan* v. *Williams*, 48 Penn. State, 238, what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell."

The sale by Mayse to Holman was on June 26, 1890, and by his own showing the complainant had practically abandoned the possession of the property in February of 1890. It is true he says that he had some one on the property or in the neighborhood all the time, to look after the property; but no such person is produced to testify, and the nature and character of his alleged care-taking are not manifested. This is not, in our opinion, the open, distinct, and unequivocal possession that is required to put a purchaser upon inquiry. And therefore we hold that the defendant Holman had no such notice of any alleged rights of the complainant as to convert him into a trustee for the complainant's benefit.

The complainant's bill cannot be sustained under any circumstances. The agreement which he sets up, if proved, would have to be held null and void under the Statute of Frauds. It is directly in the face of that statute, and it is too vague and indefinite to be enforced by a court of equity.

Moreover, there is no offer in the bill of complaint to redeem the property, or to pay the indebtedness upon it, or to bring the money into court. Nor is there any suggestion for a sale of the property to satisfy the mortgages. The bill is framed simply to keep *in statu quo* indefinitely the condition of things as they are claimed by the complainant to have existed. This is something which a court of equity will not do.

We think the decree of the special term of the Supreme Court of the District of Columbia was right, and it is therefore affirmed, with costs.

*Affirmed.*