Marian Ethel SMART, a minor, by her father and next friend, John H. Smart, Jr., Appellant,

v.

Ethel Wright NEVINS, Appellee.

No. 6573.

District of Columbia Court of Appeals.

Argued Nov. 8, 1972.

Decided Dec. 12, 1972.

**218**

Sol M. Alpher, Washington, D. C., with whom Maurice Friedman, Washington, D. C., was on the brief, for appellant.

Willis C. Payton, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and FICKLING and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This is another case of the unrecorded deed. In this appeal, the heir and sole issue (*semble*) of the occupant and owner of record of a family dwelling house and lot challenges the validity of a deed executed by the decedent, conveying this property to her sister. Like so much litigation which arises because of the failure of decedents to settle their affairs by will, *inter vivos* instruments, or even letters of explanation, this is a classic example of a situation which created false expectations.

In 1950, Mrs. Ethel Nevins of Philadelphia (appellee here), knowing that her sister, Carrie Johnson, was pregnant, offered to buy a house in this city which would provide a home for the young mother and her prospective child. The terms of the agreement were that Mrs. Nevins would advance money for the equity—some $1,500—a first and second mortgagee making the balance of the payments. At the closing in the of-

fice of the title company, the vendor executed a deed to the sister, who then signed another deed conveying the same property to Mrs. Nevins. By instructions to the title company, all the instruments executed at the closing, including the notes and deeds of trust to the mortgagees (signed by Carrie Johnson), were recorded, except the conveyance to Mrs. Nevins. In the court below, the latter explained that she did not wish her title to be a matter of record because she did not want her husband, with whom she was having some difficulty, to know of the transaction. Presumably, she was adverting to possible assertion by him of inchoate curtesy rights.

Shortly thereafter, the mother and putative father moved into the house, and the child—a daughter—was born. The testimony shows that the father paid rent and made other contributions to the household expenses. Additional revenues were received from lodgers, who varied between three and four in number. During the first six years after the title closing, Mrs. Nevins also sent her sister $50 a month. Out of these miscellaneous receipts and other sources of income, the owner of record was enabled to handle maintenance expenses, discharge one of the mortgages, and make sufficient amortization on the other, so that at her death in 1971, liens against the property had been reduced from approximately $12,000 to $3,000.

During her lifetime, the daughter had been informed by her mother that if the latter should die, the house would be hers. The daughter also testified that her aunt (the grantee of the unrecorded deed) had told her the same thing. The mother left no will. After the mother's death, however, the aunt produced the deed and asserted title by having it recorded.

The daughter, claiming as next of kin of the intestate, thereupon brought this action.[1] The trial court rejected her argument that

the deed should be treated, at most, as an equitable mortgage, and held that the deed was good between the parties. On appeal, the daughter asserts that she met her burden of proving that the deed, though absolute on its face, was intended to be a mortgage and that it was error not to so hold. In support of this claim, she points to various facts in the record, laying special weight on appellee's failure to record the deed after the purported reason for not doing so ceased to exist.

■ We are not persuaded that the trial court erred in rejecting appellant's contention that the aunt had lost title to the property, or at best can claim only as a secured creditor, for her advances to the purchase price. A deed conveying real estate is one of the most solemn instruments known to the law. It is fundamental that the purpose of recordation is to protect the rights of bona fide purchasers, creditors, assignees, and others relying upon the indicia of record ownership. Fitzgerald v. Wynne, 1 App.D.C. 107 (1893). But as between grantor and grantee, the failure of the latter to record cannot be viewed as a waiver. Munsey Trust Co. v. Alexander, 59 App. D.C. 369, 42 F.2d 604 (1930); Fitzgerald v. Wynne, *supra*. *See also* D.C.Code 1967, § 45–501. The position of an heir, a devisee, or a donee of such grantor is no better than that of the person from whom he is claiming, as it is elemental that no person can give or bequeath something that does not belong to him.

■ Parol evidence is admissible to show what the actual intent of the parties was at the time of executing a written instrument, including a deed. Compton v. Atwell, 93 U.S.App.D.C. 99, 207 F.2d 139 (1953). However, "[the] presumption is that a deed is what it purports to be on its face, and one who seeks to establish the contrary has the burden of doing so by clear and convincing evidence." Davis v. Stone, 236 F.

1. Actually, as the daughter was then an infant, the action was commenced by her putative father as "next friend." Since that time, the daughter has reached her majority, so that for purposes of this opinion, she has been viewed as appellant here.

Supp. 553, 556 (D.D.C.1946); Hayward v. Mayse, 1 App.D.C. 133 (1893). Here, while there was some evidence to support appellant's theory of the case, when viewed in its entirety the evidence was equivocal. It is uncontroverted that appellee furnished the down payment and made contributions toward the mortgage payments for a number of years thereafter. It is unclear whether the remainder of the payments were made from other sources of income or from the rents derived directly from the house itself. Appellant lays great stress on the fact that appellee failed to record the deed after the death of her husband, some 15 years before the death of appellant's mother, arguing that this should be viewed as a suspicious circumstance.[2] Such failure, however, is at least as consistent with neglect as it is with fraudulent intent. In any event, this was a question to be resolved by the trial court and since we find no error, the decision is

Affirmed.

---

2. Appellant raises no question of laches or estoppel, but merely one of credibility.