Jack HERTZ and Helen Hertz,
Appellants,

v.

Harry S. KLAVAN, Executor of the Estate of Jessie S. Tschipke, Appellee.

No. 11000.

District of Columbia Court of Appeals.

Argued March 15, 1977.

Decided June 2, 1977.

J. Dominic Monahan, Washington, D.C., for the appellants.

Solomon L. Margolis, Washington, D.C., with whom Mark J. Wishner, Washington, D.C., was on the brief, for appellee.

Before KELLY, GALLAGHER and MACK, Associate Judges.

MACK, Associate Judge:

On this appeal we are asked to review the action of the trial court, setting aside and cancelling a deed executed by a widow four months prior to her death in 1974 at ninety-eight years of age. We are satisfied that the trial court's holding was legally appropriate and sufficiently supported by the evidence, and we therefore affirm.

## I.

The deed in question was signed by the decedent in a hospital where it was brought to her by her nephew, appellant Jack Hertz.[1] It conveyed to Hertz and his wife the decedent's residence. There was evidence that persons were hurriedly summoned by Hertz to witness the execution, that the deed was read to decedent (who could neither read nor write English, except her name) and that when it was presented to her for signature, her nephew said she was to sign in order that he "could take care of the property for her."

The property thus purportedly conveyed was the primary asset of decedent's estate which, by virtue of her 1970 will, was left to establish a trust fund to provide scholarships, in memory of the testatrix and her long-deceased husband, for orphans whose parents had died in defense of Israel. The will specifically recited that no provision was being made for appellants because she had made numerous gifts to them in her lifetime[2] and that they were then in good financial condition. Named as executor was the lawyer who drafted the will after (according to his testimony) the testatrix indicated that she did not trust her nephew enough to name him as an executor since the latter was anxious to "get . . . hold of the house." The lawyer testified that the decedent had been happy and excited about establishing the trust fund through this bequest. His testimony was corroborated by the deposition of a woman who had known decedent for many years, who had functioned at one point in time as her power of attorney and who had witnessed both the execution of the deed and the will.

Upon the death of the testatrix, the executor first learned of the existence of the deed and, after investigation, brought this petition charging that it had been secured through fraud, duress or undue influence, and that the grantor lacked sufficient capacity to execute it. The trial court found that the decedent was of sound mind and competent when she signed the deed but that her intention was to convey the property to appellants only to enable them to manage it for her because of her ill health and hospitalization. It found that she had not intended permanently to deprive herself of the property or to make a gift of it to appellants. On these grounds, the trial court ordered that the deed be set aside and cancelled, and that title to the property be restored to the name of the decedent. The court further ordered that the case be referred to the Office of the Auditor to determine what amounts, if any, appellants are entitled to receive as compensation for improvements to the property, and what amounts, if any, appellee is entitled to receive for rents and profits obtained by appellants from the operation of the property

---

1. In the office of the Recorder of Deeds, the signature of the grantor on the official transfer form was waived.

2. There was evidence that decedent had helped to bring her nephew to this country, had helped him get a start in business and had given a house to him previously.

during the period in which they had custody and control of it. This appeal followed.

## II.

Appellants characterize the trial court's action as the imposition of a constructive trust and argue that it must be reversed. Appellee claims the trial court's judgment can be upheld either as a constructive trust or as a resulting trust. Because we agree that the ruling can be sustained under the constructive trust rationale, we do not reach the question of whether a resulting trust was established by the evidence.

We are faced initially with the principle that a deed conveying real estate is one of the most solemn instruments known to the law. There is a presumption that it is what it purports to be on its face, *Smart v. Nevins*, D.C.App., 298 A.2d 217, 219 (1972), and one who endeavors to prove otherwise must satisfy the "clear and convincing" burden of proof. *Id. See also Davis v. Stone*, 236 F.Supp. 553, 556 (D.D.C. 1964); McCormick on Evidence § 340 (2d ed. E. Cleary 1972). But it is likewise axiomatic, and appellants concede, that parol evidence is admissible to show the actual intent of the parties to a deed. *Smart v. Nevins, supra; cf. Compton v. Atwell*, 93 U.S.App.D.C. 99, 207 F.2d 139 (1953). It is not true, as appellants argue, that only evidence of fraud is admissible to contradict the terms of a deed and support the imposition of a constructive trust.

A constructive trust is a flexible remedial device used to force restitution in order to prevent unjust enrichment. Inequitable conduct short of fraud will cause equity to employ this remedy. *Harrington v. Emmerman*, 88 U.S.App.D.C. 23, 27, 186 F.2d 757, 761 (1950); *Mandley v. Backer*, 73 App.D.C. 412, 121 F.2d 875 (1941). "Since a constructive trust is found for the purpose of preventing humans from being successful in shady bits of behavior, it is universally recognized that the required operative facts can be proved by parol. . . ."

4A Powell on Real Property ¶ 594, at 567 (1974).

Stated differently, "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." [3] Thus, restitution by way of constructive trust may be appropriate in a wide range of situations, including, for example, where the transfer of property was induced by a mistake of fact, for embezzlement, conversion of goods, fraud, duress, undue influence, and breach of a fiduciary duty. D. Dobbs, Law of Remedies § 4.3 (1973); G. Bogert, Trusts and Trustees §§ 471 *et seq.* (2d ed. 1960); IV Scott on Trusts §§ 461 *et seq.* (2d ed. 1956).

Thus, in the instant case, it was not necessary for the trial court to make explicit findings of fraud. The court's finding that Mrs. Tschipke did not intend to make a gift of the house, but intended it to pass to appellants only so that they might take care of it for her, makes this case one in which "a party has obtained property which does not belong to him and which he cannot in good conscience withhold." *Blake Construction Co. v. American Vocational Association, Inc.*, 136 U.S.App.D.C. 6, 9, 419 F.2d 308, 311 (1969). The remedy of a constructive trust was, therefore, appropriate. There being clear and convincing evidence in the record, including testimony by totally disinterested parties, to support the trial court's findings, the judgment must be sustained.

*Affirmed.*

---

3. *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 382, 122 N.E. 378, 380 (1919) (Cardo- zo, J.), *quoted in Harrington v. Emmerman, supra* at 27 n. 9, 186 F.2d at 761 n. 9.