OWEN McDONALD, as Administrator, etc., of MARY McDONALD, Deceased, Plaintiff, v. ELIZABETH SARGENT and the SENECA FALLS SAVINGS BANK, Defendants.

Supreme Court, Seneca County, September, 1923.

Banks and banking — joint savings bank deposit — when deposit of moneys in joint account deemed to be for convenience only — when survivor directed to repay fund to estate.

In the present state of the law joint deposits not in the form provided by section 249(3) of the Banking Law, as amended in 1914, are still presumed to have been made for convenience only and in the absence of proof rebutting that presumption no title or ownership vests in the survivor.

Two days before the death of plaintiff's intestate at about the age of seventy years there was prepared and delivered to her niece whose home she had considered as hers after the death of her sister, the mother of said niece, a check upon the defendant, a savings bank, payable to the order of said niece for $2,055.01 and " all accumulations — account 4287 and make joint account of same." Upon presentation of the check which was signed by the decedent with her cross mark and witnessed, the account which then called for $2,096.11 was closed and that amount forthwith redeposited to the joint credit of said niece and the decedent. A new passbook therefor was issued in the names of both and delivered to the niece, upon which was stamped in ink under the name, " Either or survivor may draw." After the death of decedent at the house of said niece the joint account was closed and the balance therein deposited to the individual credit of said niece. The complaint in an action by the administrator of decedent to recover the amount of the deposit as it was at the time of decedent's death, brought on the theory that no title thereto ever vested in the niece to whom the check was delivered, alleged that at the time the change in the account was made the decedent was incompetent to manage her affairs or do any business and that the transfer was procured by fraud and undue influence but it was established to the satisfaction of the court that decedent retained up to the time of her death full testamentary capacity. *Held*, that no direction having been given that the money be deposited according to the form of the statute, but only in joint account, and no effort having been made to rebut the presumption that such deposit was made only for convenience, the ownership of any portion thereof not expended for the benefit of decedent was still in her estate.

Judgment directed for plaintiff, with costs to both parties payable out of the fund with provision that all money expended therefrom by the niece for the benefit of decedent or her estate be allowed as credits.

ACTION to recover savings bank account.

*Daniel W. Moran*, for plaintiff.

*Hermon A. Carmer*, for defendant Sargent.

*Clarence A. MacDonald*, for defendant Seneca Falls Savings Bank.

SAWYER, J. The money involved in this controversy belonged to plaintiff's intestate, Mary McDonald, and was the accumulated

savings of a long series of years from wages earned by her as a domestic servant. She was about sixty-six to sixty-eight years old at the time of her death, which occurred November 17, 1919, and resulted directly from pneumonia, although preceded by a period of declining health which had existed for more than a year. This plaintiff (her brother) and various nieces and nephews, of whom the defendant Sargent, at whose home she died, was one, survived her.

·Two days before her death there was prepared and delivered to the defendant Sargent for her a check upon the· defendant Seneca Falls Savings Bank of which the following is a copy:

" No. 4278          Seneca Falls, N. Y. *Nov.* 15, 1919
              " The Seneca Falls Savings Bank
" Pay to the
    " Order of Elizabeth Sargent $2055–01/100 Two thousand fifty-five and 01/100————————Dollars and all accumulations — account 4287 and make joint account of same witness to mark.

    " W. S. MacDonald.                    Mary X McDonald."
                                              her
                                              mark

The savings bank account, with its accumulations, then amounted to $2,096.11, and upon presentation of the check by Mrs. Sargent was closed and that amount forthwith redeposited to the joint credit of herself and Miss McDonald; a new passbook therefor was issued in the name of both and delivered to Mrs. Sargent, upon which was stamped in purple ink under the names the words " Either or survivor may draw."

After the death of Miss McDonald the joint account was in turn closed and its balance deposited to Mrs. Sargent's individual credit. There now remains (including some earned interest) the sum of $1,539.08, which amount has been tendered in court for the bank and, by arrangement between counsel, is left to await the outcome, the action by stipulation being dismissed, without costs, as against the bank.

It should be said in passing that the evidence shows a considerable amount of the money withdrawn from these accounts by Mrs. Sargent was expended by her for the benefit of Miss McDonald including her funeral and other mortuary expenses.

The action is to recover the moneys for Miss McDonald's estate and is founded on the theory that no title thereto ever vested in the defendant Sargent; that at the time the change in the account was made Miss McDonald was incompetent to manage her affairs or do any business whatsoever and that the transfers were procured by undue influence and fraud practiced upon her.

Beginning with something more than a year before her death she had gradually deteriorated in bodily strength with some accompanying weakening of her mental powers. As is usual in such cases all changes in appearance and manner as well as all eccentricities of conduct are seized upon as evidencing incompetency, while upon the other hand her bodily weakness is attempted to be minimized in support of the claim that there had transpired no diminution of her mental powers and business acumen. From a careful study of the whole evidence I have reached the conclusion that she retained up to the time of her death full testamentary capacity. That she knew the nature and extent of her property cannot be doubted and that she had a clear understanding of her relationship to whose who would normally inherit from her, or at any rate to such of them as she had been on terms of intimacy with during the latter part of her life, is equally clear. Her money had been accumulated from small savings and as is usual with those of her type she was very secretive concerning it. Her wants had been few and the spending of money was foreign to her habit. In twenty-nine years she had but once drawn anything out of her bank account and that was more than twenty years before her death. She had always worked and saved. Throughout her year of illness the desire to work and earn continued uppermost in her mind. She spent no money needlessly except on one occasion when she offered to pay an exorbitant price for a service rendered her. She maintained her habit of secrecy about her affairs and until she was finally upon her death bed kept her bank book upon her person, safe from prying eyes. Until the making and delivery of the check referred to those who were close to her supposed she had, at best, only a small amount of money. In all such habits of thought and life she never changed. Until within a few days before her death she met and visited with her friends and relatives as much as her bodily infirmity permitted, was interested in them and life. When not at work she had made her home with her sister, Mrs. Murphy, and when her end drew near went to Mrs. Murphy's daughter, the defendant Sargent, whose home she had considered hers after her sister's death, and whom, it is reasonable to believe, she would have preferred as the object of her bounty.

A number of instances are related as indicating that during those last months she was a victim of hallucinations and delusions, but however this may be, they were not of such a nature as rendered her incapable of understanding the condition of her property or of apprehending her true relations to those who might be expected to share her estate. There is no evidence of any fixed, continuing or universal mental incapacity, and if her last will and testament

were here involved, she must necessarily be held to have been of testamentary capacity. *Dobie* v. *Armstrong*, 160 N. Y. 584; *Matter of Heaton*, 224 id. 22. If she were competent to dispose of her property by will, it seems a truism and needs no argument that she might effectually dispose of it by gift, either *inter vivos* or *causa mortis.*

Concerning the allegations of fraud and undue influence the proof is entirely silent. There is nothing to indicate that the subject of the change of the bank account or of any other gift to Mrs. Sargent had ever been mentioned between them, or by any person in her behalf. So far as appears her first knowledge of Miss McDonald's intention in that regard came when the check was handed to her. That she knew Miss McDonald wished to consult with a lawyer may be, perhaps, inferred from the fact that her husband told the attorney that Miss McDonald wished to see him, but no other or further inference can be drawn from that fact. Neither fraud nor undue influence is to be presumed and in the absence of trust relations or other special surroundings the burden of showing same is upon the party who alleges it. *Matter of Smith*, 95 N. Y. 516-522; *Thompson* v. *Peterson*, 152 App. Div. 667-672. In the absence of any proof it must be held that neither allegation is sustained.

If the change of this bank account served to vest the ownership of the money which it represented in Miss McDonald and the defendant Sargent jointly, the action must be dismissed and it, therefore, becomes necessary to consider the legal effect of that transaction. It will be observed that the check directed the bank to pay the moneys to the order of Mrs. Sargent " and make joint account of same."

Before the adoption of the amendments to the Banking Law (Laws of 1907, chap. 247; Laws of 1914, chap. 369) a deposit to the joint account of persons other than husband and wife, whether the provisions that the survivor might draw was specific or otherwise, did not of itself sufficiently establish the intent of the person making it to create a trust in behalf of the other or to give the other joint interest in or ownership of the deposit. In the absence of other satisfactory evidence of such intent deposits of that kind were deemed to have been made only for convenience. *Matter of Bolin*, 136 N. Y. 177; *Kelly* v. *Beers*, 194 id. 49; *Matter of Reynolds*, 163 N. Y. Supp. 803.

The amendment of 1907 is now reproduced in section 249 of the Banking Law and, so far as germane, is as follows:

" 3. When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to

either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof."

It would seem, however, that the legislative intent of the act was defeated by a judicial construction which held the amendment, while protecting the bank, as between the persons in whose name the deposit stood, only operated as a presumption in favor of ownership of the joint fund by the survivor which might be rebutted by evidence that title as joint owners was not intended to be established. *Clary* v. *Fitzgerald,* 155 App. Div. 659. Accordingly in the following year the section was again amended (Laws of 1914, chap. 369, § 249) by the addition of the following words: " The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the survivor depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor." Read literally these amendments would seem to say that one in possession of the money of another might, without the knowledge or consent of the owner, deposit it in the manner described and thereby become a joint owner with its accompanying right of sole title by survivorship. The law, however, does not create absurdities nor is it intended to afford means whereby one may be deprived of his property through trickery or fraud. There is always to be read into these statutes that the deposit is made by or with the knowledge and consent of the true owner of the money.

If the meaning of the provision be otherwise, as was said by Mr. Justice Kellogg, " then arbitrarily, for no public purpose, without compensation and by no due process of law, an owner is made to lose his property without his consent and without his knowledge. If so construed it is not valid." *Matter of Buchanan,* 184 App. Div. 237. It must be borne in mind that the moneys in question belonged to Miss McDonald and the deposit in their joint names was made by Mrs. Sargent who theretofore had no ownership or interest in them. Under the cases, as well as what I

believe to be a true construction of subdivision 3 of section 249 of the Banking Law, she acquired no ownership in the moneys by her mere act of making the deposit. It is not overlooked that the check in question first directs payment to her, but its usual effect is destroyed by the subsequent direction to deposit in joint account; the check as a whole must be construed to direct payment to her as agent for Miss McDonald to deposit the moneys in their joint account and not to import a payment to her absolutely for herself. The question as to the nature of the deposit which Miss McDonald, through the defendant Sargent, intended to make is, therefore, at once presented. The statute does not provide that a deposit made jointly in the names of depositor and another person shall, in the absence of fraud or undue influence, be conclusive evidence of the intention to vest title to such deposit and the additions thereto in the survivor, but only that such disposition shall follow when the deposit is made " in form to be paid to either or the survivor of them."

Writing upon this subject in *Heiner* v. *Greenwich Sav. Bank*, 118 Misc. Rep. 326, Mr. Justice Lazansky summed up the situation by saying: " The legislature, in my opinion, intended that the form was only conclusive evidence as to accounts opened with the intention of the owner or owners of the money. The provision should not be deemed to include accounts otherwise opened." In other words, before such conclusive evidence of ownership can be said to exist the deposit must have been made with the intention of the owner of the money *in the form prescribed by the statute.*

As I understand the facts in the instant case, the account was not opened in the form prescribed by the statute but simply as a joint account in the names of Mrs. Sargent and that the statutory words " Either or survivor may draw " appear only upon the passbook. Assuming, however, that this is a technical compliance with the requirement of the Banking Law, there will still remain the question, was it so intended by Miss McDonald? Her intention, as well as her knowledge and consent, must be derived from the check which she gave for the purpose of the transfer. The case is bare of other evidential facts upon the subject. The check is without ambiguity. She directed, not that her moneys should be deposited in form to be paid to either herself or Mrs. Sargent or the survivor of them, but only that they should be deposited to the *joint account,* as seems to have been done, of herself and Mrs. Sargent. The limitation of her direction could not be extended to either Mrs. Sargent or the bank. Presumptively she knew what the law was and limited the proposed deposit in the light of that knowledge. In the present state of the law, deposits may be made

either jointly or in the form provided by the section of the Banking Law we have been considering. When made or consented to by the owner such deposit in form is absolutely conclusive of ownership in the survivor; when made jointly but *not in form* no such presumption exists. *Hayes* v. *Claessens*, 189 App. Div. 449; *Heiner* v. *Greenwich Sav. Bank, supra.* Joint deposits not in form of the statute are still presumed to have been made for convenience only and in the absence of proof rebutting that presumption no title or ownership vests in the survivor. Miss McDonald did not direct this money to be deposited according to the form of the statute but only in joint account; no effort whatever is made to take that deposit away from the consequent presumption that it was made only for convenience and it follows that ownership of any portion thereof not expended for her benefit is still in her estate.

Judgment is directed for the plaintiff, with costs to be paid out of the fund to both parties in accordance with their stipulation. All moneys therefrom expended by the defendant for the benefit of Miss McDonald or her estate to be allowed as credits.

Findings may be submitted.

Judgment accordingly.