## LUST v. MILLER, Alien Property Custodian, et al.

(Court of Appeals of District of Columbia. Submitted February 6, 1925. Decided March 2, 1925.)

### No. 4143.

I. Assignments ⊂⊃48—Equitable assignment of specific sum in hands of third person creates in assignee equitable property therein.

Equitable assignment of specific sum in hands of third person creates in assignee equitable property therein.

2. Assignments ⊂⊃48—Rule as to equitable property right in assignee of fund in hands of third person not applicable, where assignee has no agreement or is not in privity with other parties.

Rule that equitable assignment of specific sum in hands of third person creates in assignee an equitable property therein did not apply, where assignor, without understanding or agreement of any kind with assignee, notified third party to pay assignee; he not being in privity with any parties to transaction.

3. War ⊂⊃12—Unexecuted assignment held not to give assignee right to recover assigned property from alien property custodian.

Where enemy alien's direction to bank to pay deposit and deliver stock to son was not executed by delivery, and son was not in privity with either his father or bank, held, that he acquired no right as equitable assignee which would support action, under Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), to recover such deposit and stock from Alien Property Custodian.

**4. Gifts ⊕4—Delivery and acceptance necessary to pass title, before which donor has absolute right of revocation.**

Delivery and acceptance are necessary to pass title by gift, before which donor parts with neither equitable nor legal title, but has absolute power of revocation.

**5. War ⊕12—Property subject of unexecuted gift by enemy alien held subject to seizure by Alien Property Custodian, and not recoverable by intended donee.**

Where enemy alien's gift of bank deposit and stock to his son in March, 1917, was not executed by delivery by bank directed to deliver it, held, property remained that of enemy alien at time of seizure by Alien Property Custodian, and could not be recovered by son.

Appeal from Supreme Court of District of Columbia.

Suit by Fritz Lust against Thomas W. Miller, as Alien Property Custodian, and Frank White, as Treasurer of the United States, and others. Decree for the named defendants, and plaintiff appeals. Affirmed.

T. T. Marye, of Washington, D. C., for appellant.

D. H. Stanley and Peyton Gordon, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. The plaintiff below appeals from a decree of the Supreme Court of the District of Columbia, dismissing his bill against the Alien Property Custodian and the Treasurer of the United States, to recover the payment of the sum of $1,800 and the delivery of 500 shares of Chicago, Milwaukee & St. Paul Railway common stock. Plaintiff's father, Kommerzienrat Bernhard Lust, and Diskonto Gesellschaft, a German bank, were made parties defendant, and a decree taken pro confesso as against them.

It appears that early in 1917 the elder Lust, through the Diskonto, had on deposit in the Hanover National Bank of New York $5,034,60 and 500 St. Paul and Milwaukee shares which are the subject of this suit, together with other shares of stock. On March 12, 1917, the elder Lust instructed the Diskonto to pay "Mr. Fritz Lust by radio telegraph to Hanover National Bank 500 shares of Chicago-Milwaukee common and $1,800 in cash." The representative of the Hanover Bank testified that on March 14, 1917, a radio was received from the Diskonto as follows: "Pay $1,800 Fritz Lust Hotel Colonial, 81 Street stop deliver free value to same party ex Depot 500 Chicago, Milwaukee

common shares telegraph execution." An employee of the Hanover Bank called up the Hotel Colonial, at Eighty-First street, New York City, and inquired for Fritz Lust, and was informed that Lust was in the hospital. Nothing further was done to deliver the money or the St. Paul stock to the plaintiff. The Diskonto Bank promptly notified the elder Lust that it had communicated by radio telegraph with the Hanover Bank, instructing it to deliver the money and stock as above stated. Plaintiff was never informed of the action of his father's attempt to make him a gift of the money and stock, until long after the Armistice was signed. In the meantime the stock and money had been seized by the Alien Property Custodian on the account of the Diskonto Bank.

Counsel for plaintiff attempt to avoid the difficulty of a nondelivered gift, by contending that the order of the elder Lust to the Diskonto Bank, and the latter's action upon receiving the order, constitute an equitable assignment in favor of the plaintiff, which entitled him, under section 9 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), to demand the delivery of the securities, or to maintain an action for their recovery.

[1] Counsel for plaintiff rely upon the perfectly sound principle of equity to the effect that an equitable assignment of a specific fund in the hands of a third person creates in the assignee an equitable property in such fund. 3 Pomeroy's Equity Jurisprudence (3d Ed.) § 1280, and they quote from this section as follows: "If, therefore, A. [elder Lust] has a specific fund in the hands of B. [Diskonto, or its agent, the Hanover], or, in other words, B., as a depositary or otherwise, holds a specific sum of money which he is bound to pay to A., and if A. agrees with C. that the money shall be paid to C., or assigns it to C. [the plaintiff], or gives C. an order upon B. for the money, the agreement, assignment, or order creates an equitable interest or property in the fund in favor of the assignee, C., and it is not necessary that B. should consent or promise to hold it for or pay it to such assignee."

[2, 3] The principle there announced is unquestionably the law, but the difficulty in applying it to the present case arises from the fact that the elder Lust had no agreement with his son, the plaintiff, either to pay or assign to him the property in question, nor did the elder Lust give plaintiff any order upon either the Diskonto or Hanover Banks. The plaintiff had no understanding

or agreement of any kind with either the elder Lust or the banks. He was not in privity with any of the parties to this transaction. The rule of equity thus announced has no application to this case.

[4] Whatever agency may have existed with reference to this property between the elder Lust, the Diskonto and the Hanover Banks, it is clear, we think, that there was no connection whatever between the Hanover Bank and the plaintiff, so that there can be no question of double agency in this case. Indeed, plaintiff testified that he had no dealings whatever with the Hanover Bank, and had never done any banking business with it. We think, therefore, that the present case resolves itself into a simple case of donor and donee. The elder Lust, in this indirect way, attempted to make a gift to his son of the money and shares of stock involved. There is no principle better established in the law than that, in a gift, delivery and acceptance are necessary to pass title. Until there is delivery and acceptance, the donor parts with neither equitable nor legal title, and the power of absolute revocation rests with him, with no intervening right in favor of the donee.

In Smith v. Peacock, 114 Ga. 691, 40 S. E. 757, 88 Am. St. Rep. 53, a box, containing a specific sum of money, was delivered by one Graham to his agent, with directions to make a gift of the money to certain designated persons, which the agent failed to do. Graham instituted an action in trover and bail to recover the specific money which the agent still had in his possession. During pendency of the action Graham died and his administrator was made plaintiff. The defendant contended that, when the money was delivered to him with instruction to turn it over to the donees, the gift was complete. The court, however, held as follows: "So far as the portions of the money which the defendant was instructed to deliver to these two intended donees were concerned, the gifts were incomplete for the want of the essential elements of delivery and acceptance, and the money was still in the possession of the defendant, as the agent of Samuel G. Graham, who had the right to revoke the agency which he had created, and terminate the right of the defendant to hold the money for the purpose of distributing it to the intended donees."

In Telford v. Patton, 144 Ill. 611, 33 N. E. 1119, Patton brought a suit in replevin against Telford, as administrator of the estate of one Samuel Telford, deceased, to recover possession of a certificate of deposit for $2,600 executed by a particular bank and found on the body of the deceased after his death. The certificate was made out to the plaintiff, Patton. The bank knew nothing of Patton, but the deceased had deposited money and secured the certificate in that name. The trial court instructed the jury that, if they believed that Telford, the deceased, had deposited $2,600 in the bank for the benefit of the plaintiff, Patton, and received from the bank the certificate of deposit, then the certificate would be the property of the plaintiff, and she would be entitled to recover the possession thereof. The Supreme Court, holding this instruction erroneous, and considering whether or not a trust was established in favor of the plaintiff, held that at most the transaction would amount to nothing more than a donation or gift to the plaintiff. On this point the court said: "It is essential to a donation inter vivos that the gift be absolute and irrevocable, that the giver part with all present and future dominion over the property given, that the gift go into effect at once, and not at some future time, that there be a delivery of the thing given to the donee, that there be 'such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.' 1 Parsons on Cont. marg. p. 234; Dole v. Lincoln, 31 Me. 422; Robinson v. Ring, 72 Me. 140; Northrop v. Hale, 73 Me. 66; Grover v. Grover, 24 Pick. 261. The delivery must be made with the intent to vest the title in the donee. Jackson v. Twenty-Third St. Ry. Co., 88 N. Y. 520. As a verbal gift is an executed contract, delivery of the subject-matter of the gift is of the essence of the title."

[5] The principle announced in the foregoing cases is too elementary to require further discussion. It follows, therefore, that the money and stock in question was subject to withdrawal at any time by the donor, and at the time of the seizure by the Alien Property Custodian it was the property of an enemy, subject to be converted to the use of the enemy, without any legal or equitable claim against it in favor of the plaintiff.

The judgment is affirmed, with costs.