**HARRINGTON et al. v. EMMERMAN et al.**

No. 10453.

United States Court of Appeals
District of Columbia Circuit.

Decided Nov. 16, 1950.

Mr. Stephen G. Ingham, Washington, D:. C., for appellants.

Mr. Milton T. Broome, Washington, D. C., for appellee Louise Emmerman.

Before WILBUR K. MILLER, PROC-- TOR and WASHINGTON, Circuit Judges..

WILBUR K. MILLER, Circuit Judge.

On September 30, 1929, Janie J. Carlin. signed a writing declaring her savings. account in the Perpetual Building Association to be thereafter a joint one in the names of herself and Louise Emmerman "subject to order of either, and balance at death of either to the survivor." [1] She-

---

1. The complete text of the writing follows:

"Carlin Janie J. or Louise E. Emmerman

"This declares the undersigned to be members of the PERPETUAL BUILD-ING ASSOCIATION of the District of Columbia, subject to all the provisions of its Constitution and By-Laws, from the *30* day of *Sept.* 1929, and the account in Series *36–38* to be theirs as joint owners, subject to order of either,.

continued, however, to treat the account as her own and reported the dividends therefrom as part of her own income subject to federal taxation.[2]

On October 5, 1948, Janie J. Carlin was adjudged to be of unsound mind. Stephen G. Ingham was appointed committee of her person and estate and qualified as such a few days later. Unable to withdraw the balance of some $9,000 in the savings account because Miss Emmerman had possession of the pass book and would not surrender it, the committee filed this suit on November 15, 1948, in the United States District Court against her and the building association. He prayed the court to declare him legally entitled to the balance and to enjoin the building association from paying any part of it to Miss Emmerman.

The latter's answer denied that Mrs. Carlin owned the account and alleged she had refused to part with the pass book "on the ground that the account was a joint account." She stated she had had the book "for months before the patient was declared of unsound mind" and added that she had made withdrawals and had "exercised dominion, control and ownership over said account." She did not say how she obtained possession of the pass book. The building association answered that it would not pay out the money until its ownership had been judicially determined.

On December 25, 1948, before any further steps had been taken in the action, Janie J. Carlin died. The District Court substituted her executors as plaintiffs in the place of the committee and permitted them to file an amended complaint in which they substantially repeated the allegations of the original complaint and added

"* * * that on September 30, 1929, the said Janie J. Carlin transferred her funds on deposit with the defendant Perpetual Building Association to the joint account as aforesaid without consideration and without the intent to give a present interest in the account to the defendant Louise Emmerman; that the said Janie J. Carlin always treated said funds on deposit as her sole property and reported all interest and dividend income therefrom as fully taxable to her in her income tax returns." Pursuant to motions to dismiss made by both defendants on the ground that no claim was stated on which relief could be granted, the District Court dismissed the amended complaint. The executors appeal.

In her motion to dismiss the amended complaint, the appellee[3] quoted the language of the deposit agreement and alleged "that the aforesaid contract creating said joint account by its terms establishes as a matter of law that all funds now on deposit at the Perpetual Building Association in the joint account designated Series 36-38 in the names of Janie J. Carlin and Louise E. Emmerman is (sic) the sole property of the said Louise E. Emmerman as surviving joint tenant."

By thus relying upon survivorship, the appellee mistook the nature and status of this action. She treated it as though the amended complaint were the original, or had been substituted for the original. She seems to have supposed that Mrs. Carlin's death had given her unquestionable title to the savings account, regardless of what had happened theretofore. But the committee had claimed the money while Mrs. Carlin still lived, thus raising the question of its ownership at that time,—not after her death. If Mrs. Carlin then owned the fund or an undivided portion of it, the committee's demand entitled him immediately to receive her interest, and the deposit should have been delivered to or divided with him. It was as though Mrs. Carlin herself had required the pass book of Miss Emmerman. Acting through her representative, she demanded the account; she asserted she was the owner of it, thus in effect saying she

and balance at death of either to the survivor. Signed in duplicate.

 "Name *Janie J. Carlin*
 Address *515 B St., N. E.*
*Add* Name *Louise E. Emmerman*
 Address *437–11th St., N. E.*
"Witness *Minnie Emmerman*"

2. The facts are stated in this opinion according to uncontroverted allegations in the pleadings. No proof was taken.

3. We use the word "appellee" to describe Miss Emmerman, although of course the building association is also an appellee.

had not made a present gift of any interest in it, and accused the appellee of wrongfully withholding it from her.

The committee was either right or wrong in claiming ownership. Either Mrs. Carlin owned the account or an interest in it, or she did not. If the committee was right, his demand ended the joint nature of the account and destroyed the survivorship provision; for if Mrs. Carlin was the owner of and entitled to have upon demand the entire fund, Miss Emmerman had no further right or interest of any kind,—and if Mrs. Carlin was the owner of and entitled to have upon demand a one-half interest, then Miss Emmerman was the owner of the other half and was entitled to its immediate enjoyment but was entitled to nothing more.

In other words, the rights and titles of the parties were fixed when the demand was made and were to be judicially determined as of that time; there was no survivorship arrangement thereafter, and whatever interest Mrs. Carlin had in the account passed to her executors.

In this court the appellee follows the same erroneous survivorship theory by contending in her brief that Matthew v. Moncrief, 1943, 77 U.S.App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856, " * * * is determinative of the question as to the conclusiveness of the intention of appellants' decedent under the written agreement here involved, and forbids the offering of oral proof to contradict this fact. And that, this being so, the allegations made in the amended complaint on this phase of the action are immaterial, and will not support a claim for relief."

The Matthew case and Quigley v. Quigley,[4] Quigley v. Whyte,[5] and Garrett v. Keister,[6] also relied upon by the appellee, had to do only with the right of a donee-

survivor to take the deposit under a declaration such as the writing involved here. None of those cases dealt with the question now before us: whether, by such a writing, the original depositor transfers the account, or an interest in it, *in praesenti* to the person whom he designates as joint owner.[7] That question has not heretofore been presented to this court, and has arisen but seldom in other jurisdictions.

So the question is, what irrevocably vested interest, if any, did Miss Emmerman have in the account at the time the committee demanded the pass book of her? What interest, if any, did Mrs. Carlin, who was still living, then have in the fund? We do not understand Miss Emmerman to contend, and we suppose it would not be suggested, that by the 1929 declaration Mrs. Carlin made a present gift to Miss Emmerman of the entire account and divested herself of any interest in it. If not, then the most Miss Emmerman can claim is that, at the time of the demand, she was the owner of an undivided one-half interest in the fund. She could support that claim only by establishing a present gift of such an interest.

Conceding for the moment that Miss Emmerman owned through gift an undivided one-half interest in the account, it was nevertheless her duty to permit a division of the money between herself and the committee, when the latter demanded the pass book. For, in that situation, she had no right to withhold from him the portion owned by Mrs. Carlin. She cannot justify her failure to do so by saying she feared the committee might withdraw and hold the entire amount if she gave him the book; for she could have gone with him to present the pass book to the building association for a division.[8] The fact that

4. 1936, 66 App.D.C. 134, 85 F.2d 300.

5. 1936, 66 App.D.C. 135, 85 F.2d 301.

6. 1932, 61 App.D.C. 25, 56 F.2d 909.

7. The language in the Matthew opinion which might be construed as doing so is obiter dictum.

8. Nor can she justify her conduct by asserting that the terms of the deposit

agreement, including its use of the words "joint owners," created a technical joint tenancy which could not be severed by the mere request of one tenant that the estate be divided. The relation created by the writing was a tenancy in common. Joint tenancy cannot exist unless there be present unity of interest, title, time and possession; that is to say, the interests must be identical, they must accrue

she did not do so, coupled with her allegation that she had exercised "dominion, control and ownership over said account," makes it appear that she was preventing a severance in the hope that death would make her the owner of all the money. Her conduct was inequitable, to say the least, and justified a court of equity in imposing a constructive trust, which is a remedy employed to prevent unjust enrichment.[9] Thus Miss Emmerman's own act in rejecting the committee's demand worked a severance as effectively as if the account actually had been divided, with the result that the right of survivorship terminated and Mrs. Carlin's subsequent death became immaterial. It is therefore clear that, viewing the situation in the light most favorable to Miss Emmerman, that is, in supposing that she had obtained by gift the present ownership of a one-half interest, she took nothing by survivorship and the District Court erred in awarding the entire fund to her.

 In the foregoing paragraph we have discussed the situation as though it were conceded that Miss Emmerman had acquired by gift an undivided one-half interest and therefore had absolute title thereto when the demand was made. But there was no such concession, and the contrary was asserted. Consequently the controlling issue in the case was whether the deposit agreement in fact gave Miss Emmerman a present one-half interest in the fund. That depended on whether Mrs. Carlin intended it to do so, for there can be no gift if the alleged donor did not intend to make one. Moreover, the donee has the burden to establish a gift. Myers v. Tschiffely, 1934, 64 App.D.C. 17, 73 F. 2d 657. And when a depositor creates a joint account for himself and another, without consideration, it is presumed to have been done for the convenience of the depositor. Kennel v. Kennel, 1941, 128 Conn. 200, 21 A.2d 400; McDonough v. Portland Savings Bank, 1938, 136 Me. 71, 1 A.2d 768; McDonald v. Sargent, 1923, 121 Misc. 437, 201 N.Y.S. 129. This presumption also served to cast upon the appellee the burden of showing that Mrs. Carlin intended to give her a present interest.

 To be sure, the deposit agreement described the two women as "joint owners" and provided that either might draw on the account; but the agreement was on a printed form supplied by the building association, presumably for its own purpose and protection. Some such form probably would have been required by it to safeguard its own interests even had Miss Emmerman then stated the arrangement was merely for the convenience of Mrs. Carlin. The writing was conclusive as between the two women on the one hand and the building association on the other, but was not conclusive between the individuals as to whether a present gift had been intended.

by the same conveyance, they must commence at the same time and the estate must be held by the same undivided possession. At least two of these unities are absent here. Moreover, equity has long favored tenancy in common as against joint tenancy.

9. " * * * A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment." Restatement, Law of Restitution § 160, comment *a* (1937).

Judge Cardozo said in Beatty v. Guggenheim Exploration Co., 1919, 225 N.Y. 380, 122 N.E. 378, 380,

" * * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

In the later case of Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 548, 62 A.L.R. 1, Judge Cardozo said,

" * * * A constructive trust is, then, the remedial device through which preference of self is made subordinate to loyalty to others."

It should be remembered that inequitable conduct short of fraud will cause equity to employ this remedy. The case of Doing v. Riley, 176 F.2d 449, decided by the Fifth Circuit in 1949, contains a thorough discussion of constructive trusts, including an extensive collection of authorities.

In Castle v. Wightman, 1939, 303 Mass. 74, 20 N.E.2d 436, 20 N.E.2d a case in which the signature card used the word "joint" in describing the relation created, the court said, at pages 437–438 " * * * Thus, in cases of joint deposit, while the contract of deposit is conclusive as between the parties and the bank, yet it may be shown that, for example, the execution of the contract of joint deposit was procured to be made by the depositor by the exercise of undue influence upon him, (case cited), or that it was intended as a matter of convenience, (case cited), or that it was void if intended by the depositor to hinder, defraud or delay his creditors, (case cited), or that the gift of the interest in the joint account was one upon a trust, (case cited); in brief, that the result of a present gift was not intended."

The recent case of Cashman v. Mason, 8 Cir., 1948, 166 F.2d 693, involved the question which we have here. There a depositor executed joint deposit agreements such as that before us, making her niece codepositor. Later she gave the bank notice of revocation and signed new agreements designating her brother as codepositor. After her death the niece claimed the money as donee. The Eighth Circuit held the requisites of a valid gift *inter vivos* to be delivery, intention to make a gift on the part of the donor, and absolute disposition of the subject of the gift, and denied the claim of the niece because the evidence did not show the presence of all the requisites.

In Lust v. Miller, 1925, 55 App.D.C. 217, 4 F.2d 293, this court announced substantially the same rule with respect to gifts *inter vivos*. Moreover, in Lee v. Lee, 1925, 55 App.D.C. 344, 5 F.2d 767, we held that an unqualified declaration of gift was not effective because the agreement by which the subject of the gift (a trunk with valuable contents) was deposited with a trust company permitted withdrawal either by the donor or the donees. This retention of dominion by the donor was held to defeat the gift.

In this case the executors alleged that Mrs. Carlin transferred her funds to the joint account without the intent to give a present interest therein to the appellee. Whether she did so intend was the decisive question, since her right to ownership and possession was asserted during her life. Miss Emmerman did not deny the allegation of lack of intent, probably because she was relying upon her supposed right through survivorship.

As the District Court erred in dismissing the amended complaint, the case will be remanded for that order to be set aside, after which the appellee should be given an opportunity to plead to an issue, and, if she can, to prove a gift *in praesenti*. If Miss Emmerman does not plead further, the entire fund should be awarded to the executors, as in the present state of the record they are entitled to that relief.

Reversed and remanded for proceedings not inconsistent with this opinion.