Russell **HARDY**, Sr., Plaintiff,

v.

Elisabeth C. **HARDY** and Michael F. X. Dolan, Defendants.

Civ. A. No. 4075–61.

United States District Court
District of Columbia.

Oct. 30, 1964.

cordance with federally prescribed standards."

Irving G. McCann, Washington, D. C., for plaintiff.

Michael F. X. Dolan, Washington, D. C., for defendant wife and attorney pro se.

KEECH, District Judge.

This is an action by plaintiff husband against his defendant wife and her attorney, in four counts (Counts 1 and 2 being against both defendants, and Counts 3 and 4 being against defendant wife only).

Plaintiff husband and defendant wife have been married since 1939. From its inception the marriage has been subject to frequent controversies, including the filing of this suit in 1961.

From 1948 to 1958, plaintiff gave his wife approximately $125 per week to cover household expenses. Mrs. Hardy took any excess in these funds and invested it in securities in her own name. In January of 1961, plaintiff discovered such use of this excess. Subsequently, plaintiff and defendant wife discontinued residing together, and sold their house in Kenwood, Maryland, which they held as tenants by the entireties. (An action for divorce instituted by plaintiff prior to this action is pending in the Circuit Court of Montgomery County, Maryland.) This action seeks to recover the proceeds of the sale of the Kenwood home and to impress a trust on securities held by defendant wife which were purchased with a portion of the aforesaid household funds.

Count 4 was disposed of by the court at the end of the plaintiff's case, the court finding for the defendant wife. The plaintiff and said defendant are still husband and wife. While the marital status .continues, property held by the entireties may not be partitioned or awarded to one of the parties, except by consent. Hogan v. Hogan, 102 U.S.App. D.C. 87, 250 F.2d 412 (1957).

As to Counts 1 and 2: Plaintiff alleges that defendants (Mrs. Hardy and Mr. Dolan, her attorney) converted the proceeds of the sale of the Hardys' Kenwood house, and are responsible for the failure to deposit the funds where they would accumulate interest. The net amount received for the sale of this house was $55,540.43, and a check for that figure was made payable to Russell Hardy, Sr., and Elisabeth C. Hardy as tenants by the entireties. At the suggestion of plaintiff the check was delivered to Mr. Dolan. Subsequently, this check was certified, and, later still, was converted into six certified checks, with a view to depositing them in federally insured savings and loan associations, all

deposits to be within the $10,000 federal insurance limit. The evidence shows that the parties were unable to come to an agreement as to what institutions should be used. When a list had seemingly been agreed upon, plaintiff called a week later to say that one of the institutions was untrustworthy, and that he would never allow money of his to be placed there. He made no alternative suggestion. Furthermore, plaintiff made demands that the pass books covering such accounts should be in his exclusive possession, an arrangement which was unsatisfactory to Mrs. Hardy. While plaintiff testifies that this was not a *sine qua non*, the fact remains that the parties were not able to agree on the deposit of the funds, and as a result the funds were not deposited so as to earn interest. The checks were finally deposited by Mr. Dolan with the Clerk of the Circuit Court of Montgomery County, Maryland, in the divorce action pending between the parties.

As to Count 2, the court finds that no conversion has been shown, and therefore finds for defendant wife and defendant Dolan.

As to Count 1 also, the court finds for both defendants. The checks were not negotiable until both parties signed them. They were not endorsed by the parties. Mr. Dolan could not deposit them with any banking institution. Defendant wife was also unable to effect their deposit, for the reason that no accord could be reached as to method of deposit and which institution or institutions were to be selected. Mrs. Hardy had as much interest in having the checks deposited as did the plaintiff. There is no evidence that she deliberately blocked the deposit of the checks. She was not able to negotiate the checks by her signature alone, but only in conjunction with the signature of Mr. Hardy, which was not forthcoming.

This impasse having been created without fault on the part of defendant wife or defendant Dolan, the only thing to be done was to deposit the certified checks in the registry of the Montgomery County Court. This the defendants accomplished over the objection of the plaintiff. (Defendants petitioned March 27, 1962, and deposit was ordered June 20, 1962.) In his order, Judge Shure found that the:

"parties were unable to agree on any temporary arrangement for the deposit of said funds. The court urged counsel to further consult with their respective clients in the hope that the funds could be placed in trust in a banking institution where interest could accrue pending litigation. The court is now informed that no such plans could be arranged." (Md.Eq. 24474)

The parties, plaintiff husband (a lawyer) and defendant wife, are still before the Circuit Court of Montgomery County (Hardy v. Hardy, Eq. 24474). That court would entertain an application on the part of either of the parties with reference to the checks.

This court holds the defendants are not liable to respond in damages to plaintiff for any loss of interest.

As to Count 3: From the year 1948 until 1958, plaintiff turned over to his wife approximately and irregularly $125 per week. With these funds, the wife paid the normal household running expenses, such as food, gas, electricity, cleaning, window washing, laundry, and newspapers, as well as her personal needs. She also paid a maid $35 per week, and a yard man $10 per week. Any savings over and above these expenditures, the exact figure not known, were utilized by the defendant wife for a period of years for the purchase of securities to be held in her sole account. During this period, the maid was discharged and the wife performed at least some if not all of the maid's work.

Mrs. Hardy testified that at the time the maid was dismissed there was an agreement that she (Mrs. Hardy) should do all the cleaning and cooking herself, and retain the money saved by her efforts. However, she does not claim that it was a contract. Nor could it be, since a wife may not contract for the

performance of her marital duties. Rather, she maintains that it was a gift; that there was an understanding that she should keep what she saved so long as she continued the necessary operations of the house.

**■■** The court finds that there was no gift of the household savings to Mrs. Hardy. To constitute a valid gift, the courts have held, three essential elements must be shown: (1) delivery, (2) intent to make a gift, and (3) absolute disposition of the subject matter of the gift. There is here no dispute as to delivery. The plaintiff denies having made a gift to the defendant wife. The latter's testimony in this regard was most equivocal. The plaintiff asserts that, until he discovered, in 1961, his wife's stock portfolio, he had no knowledge that there were any such savings. There was no showing of intent to make a gift. The court recognizes that such household allowances generally comprehend expenditures by the wife for personal needs such as clothes, entertainment and transportation. Such expenses are within the obligation of the husband to support and maintain his wife. Acquiescence in these expenditures does not indicate an acquiescence in the use of such funds for the creation of a portfolio of securities for the wife's sole account. To hold otherwise would be to invite disruptive influences in the home. As for the third element, there was likewise no showing of an absolute disposition of any part of the money advanced by the plaintiff to the defendant. See Murray v. Gadsden, 91 U.S.App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554. Our Court of Appeals has specifically held that where a party contends that the property in question was a gift, the burden is on the donee to show the donor's intent to make a gift. Harrington v. Emmerman, 88 U.S.App.D.C. 23, 27, 186 F.2d 757, citing Myers v. Tschiffely, 64 App.D.C. 17, 19, 73 F.2d 657.

The court finds that Mrs. Hardy did in fact appropriate certain household funds, and commingle them with her own funds which were invested in stocks and bonds.

It is therefore necessary to endeavor to determine the amount so appropriated. The evidence in this regard is sparse and fragmentary. The plaintiff sought to show that, from the year 1948 to 1958, he gave his wife an allowance of approximately $125 per week, and that from the time of the dismissal of the maid Mrs. Hardy invested the $35 per week thus saved. The court rejects this theory as too speculative. First, the plaintiff's payments were not consistently $125, but varied as to time and amount. Second, there is no proof that Mrs. Hardy invested the entire amount saved by virtue of the dismissal of the maid. She testified that she did not invest $35 per week; that she did not remember how much she saved; that it was never regular, but that she would "get a little ahead and then try to do something with it." There is no evidence as to what the actual household expenses were; whether such expenses rose following the dismissal of the maid; or whether Mrs. Hardy's reasonable personal expenses rose during this period. There is evidence as to the cost of living for a family of two as averaged from government statistics, but these figures can have practically no relevance to a family living in a luxurious neighborhood in a large house.

**■■** Under these circumstances, to what formula may the court resort in order to do equity to both of the parties? The only practical method available, under the evidence, by which to determine the amount of household funds appropriated by defendant wife is to deduct, from the total value of Mrs. Hardy's portfolio as of October 30, 1964, contributions made by her from her personal savings and a legacy from her mother. This would appear to be a reasonable method of ascertaining the amount to be declared subject to a trust in favor of the plaintiff. The record shows that as of 1964 the securities held by defendant wife in her own account aggregated $20,000 to $25,000. There is no proof that the defendant's account was ever greater than its present value. The record further shows that the defendant wife had

$7,000 of her own money coming from Victory Bonds and the net figure of $3,000 coming to her through the estate of her mother, which she invested in her security account. The court concludes that, from the securities account of defendant wife with Ferris & Company on the date of this opinion (as opposed to the testimony of a value of $20,000 to $25,000), there should be deducted the $10,000 which the court finds to be her personal contribution to the portfolio. This makes no allowance for dividends which may have been realized on her contribution to the portfolio. Where one mixes trust funds with his own the whole is to be treated as trust property, except so far as he may be able to distinguish what is his. Bird v. Stein, 258 F.2d 168, 177 (5th Cir., 1958). Defendant has failed to make a showing as to what were the earnings on her part of the securities acquired.

The court therefore finds for the plaintiff as to Count 3. The account of the defendant wife with Ferris & Company will be impressed with a trust in favor of the plaintiff, as of October 30, 1964. Defendant wife will be required to execute the necessary documents to carry into effect the foregoing conclusions.

The plaintiff has prayed for an accounting, and has elected to try all issues, including that of an accounting, before the court. The record before the court permits of no further accounting. Plaintiff has failed to show that defendant wife appropriated any funds from the household account other than those reflected in her personal securities account. The application of the simple mathematical formula which plaintiff attempts to use (i. e., multiplying the maid's weekly pay by the number of weeks in the period during which defendant wife substituted for her) is not supported by the evidence.

The court finds that the plaintiff did not, until January, 1961, have notice of defendant's use of a portion of the household funds for the purchase of securities for her sole and separate account; that suit to impress those securities with the trust was brought shortly thereafter; and that defendant has not been prejudiced by any delay in bringing action. The court therefore holds that the plaintiff's action is not barred by laches.

This memorandum may be used in lieu of findings of fact and conclusions of law.

In view of what has been hereinbefore set forth, it is, this 30th day of October, 1964,

Ordered that Counts 1, 2 and 4 be, and the same are hereby, dismissed, and further, that, as to Count 3, defendant wife's separate securities account with Ferris & Company be impressed as of this date with trust in favor of the plaintiff in accordance with the formula hereinbefore set forth, and further, that defendant wife execute such documents as may be necessary to carry into effect this order.