ESTATE OF Clayton GULLEDGE,
Deborah Walker, et al.,
Appellants.

ESTATE OF Johnsie B. WALKER,
Deborah Walker, et al.,
Appellants.

ESTATE OF Bernis GULLEDGE,
Deborah Walker, et al.,
Appellants.

Nos. 95–PR–229, 95–PR–
283 and 95–PR–284.

District of Columbia Court of Appeals.

Argued March 5, 1996.
Decided April 4, 1996.

Richard I. Chaifetz, Washington, DC, for appellants.

Safia S. Kadir, Germantown, MD, for appellees.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

The issue in these related appeals is whether the unilateral transfer by one of two joint tenants of his interest to a third party,

without the consent of the other joint tenant, converts the joint tenancy into a tenancy in common. We hold that it does.

## I.

The dispositive facts are undisputed. Clayton and Margie Gulledge owned a house at 532 Somerset Place, N.W. (the Somerset property) as tenants by the entirety. They had three children—Bernis Gulledge, Johnsie Walker, and Marion Watkins. Margie Gulledge died in 1970. Clayton Gulledge remarried the following year, but his second marriage was apparently unsuccessful.

In order to avert the possible loss, in any divorce proceedings, of the Somerset property, Bernis Gulledge advanced to his father the funds necessary to satisfy the second Mrs. Gulledge's financial demands. In exchange, Clayton Gulledge created a joint tenancy in the Somerset property, naming Bernis and himself as joint tenants. Bernis evidently expected that his father would predecease him, and that the right of survivorship which is the essence of a joint tenancy would enable him to acquire the entire property upon his father's death.

In 1988, however, Clayton Gulledge conveyed his interest in the Somerset property to his daughter, Marion Watkins, "in fee simple tenants in common."[1] In 1991, Clayton Gulledge died, and he was survived by his three children. Bernis Gulledge died in 1993 and Johnsie B. Walker died in 1994. In the now consolidated proceedings relating to the estates of Clayton Gulledge, Bernis Gulledge, and Johnsie Walker, appellant Deborah Walker, Bernis' personal representative,[2] claims that when Clayton died, Bernis, as the surviving joint tenant, became the sole owner of the Somerset property. Ms. Watkins, on the other hand, contends that Clayton Gulledge's earlier conveyance of his interest to her severed the joint tenancy, thereby destroying Clayton's right of survivorship, and that Ms. Watkins and Bernis became tenants in common. The trial court agreed with Ms. Watkins.[3] We affirm.

## II.

■ The parties agree that Clayton Gulledge's interest in the joint tenancy was alienable. They disagree only as to the nature of the interest which Clayton transferred to Ms. Watkins. The Estate of Bernis Gulledge (the Estate) argues that an owner cannot convey to a third party a greater interest than his own, *see Pyne v. Pyne,* 81 U.S.App.D.C. 11, 13, 18, 154 F.2d 297, 299, 304 (1946), and that because Clayton Gulledge's interest was subject to Bernis' right of survivorship, the interest which Ms. Watkins received from Clayton must be similarly restricted. Ms. Watkins contends, on the other hand, that Clayton's conveyance to her converted the joint tenancy into a tenancy in common by operation of law, and that she received from Clayton an undivided one-half interest in the property.

■ The question whether a joint tenant severs a joint tenancy by ultimately conveying his interest to a third party without the consent of the other joint tenant has not been squarely decided in the District of Columbia. The issue is one of law, and our review is therefore *de novo. Griffin v. United States,* 618 A.2d 114, 117 (D.C.1992). The applicable rule in a large majority of jurisdictions is that either party to a joint tenancy may sever that tenancy by unilaterally disposing of his interest, that the consent of the other tenant is not required, and that the transfer converts the estate into a tenancy in common.[4] 48A C.J.S. *Joint Tenancy* § 16, at

---

1. The trial court found that this language expressed Clayton Gulledge's intention that Marion Watkins take his undivided one-half interest in the Somerset property in fee simple, as a tenant in common with Bernis Gulledge. This finding was supported by an affidavit of Clayton's attorney.

2. Deborah Walker is the daughter of Johnsie Walker. Johnsie Walker was the personal representative for Bernis' estate, but she died while the probate proceedings were pending.

3. Judge Wolf so ruled in his Memorandum Order. Judge Long reached the same conclusion in her final order.

4. We do not address here the effect of a conveyance of one joint tenant's interest on the relationship between the remaining joint tenants where two or more joint tenants remain.

343 (1981); 2 Nicholas B. Svalina, Tiffany Real Property § 425, at 111 (3d ed. Supp. Oct. 1995); 4A Richard R. Powell, Powell on Real Property ¶ 618[1], at 51–15 (1995).

Although no decision by a court in this jurisdiction is directly on point, the discussion of joint tenancy that can be found in District of Columbia cases is consistent with the majority approach. In *Harrington v. Emmerman*, 88 U.S.App.D.C. 23, 26–27 n. 8, 186 F.2d 757, 760–61 n. 8 (1950), the court explained that "[j]oint tenancy cannot exist *unless there be present unity of interest, title, time and possession;* that is to say, the interests must be identical, they must accrue by the same conveyance, they must commence at the same time and the estate must be held by the same undivided possession." (Emphasis added). The interests of Bernis Gulledge and Marion Watkins were not created by the same conveyance, nor did they commence at the same time; the conveyance to Ms. Watkins thus destroyed the unities of title and time. *See Alexander v. Boyer*, 253 Md. 511, 253 A.2d 359, 364 (1969).[5]

In *Coleman v. Jackson*, 109 U.S.App.D.C. 242, 286 F.2d 98 (1960), *cert. denied*, 366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 391 (1961), the court held that where a marriage was invalid, the deed purporting to convey property to the couple as tenants by the entireties created a joint tenancy instead. Contrasting the two types of estates, the court pointed out that "[o]f course, joint tenancy lacks the feature of inalienability which tenancy by the entireties possesses.... [I]nalienability is an incident only of estates by the entireties...." *Id.* at 246, 286 F.2d at 102.

In *In re Estate of Wall*, 142 U.S.App.D.C. 187, 190, 440 F.2d 215, 218 (1971), the court restated the principle of *Coleman* and distinguished a tenancy by the entireties from a joint tenancy upon the ground that a tenancy by the entireties creates a "unilaterally indestructible right of survivorship," while a joint tenancy does not. The court further stated that "*survivorship* incidental to joint tenancy differs because it *may be frustrated*

*... by alienation* or subjection to debts of a cotenant's undivided share or by compulsory partition." *Id.* at 190 n. 14, 440 F.2d at 218 n. 14 (citing Richard R. Powell, Powell on Real Property ¶ 618, at 672–79 (1967) (emphasis added)).

■ Although the foregoing authorities do not conclusively settle the question before us, they provide no support for the notion that this court should reject the majority rule. Moreover, "[b]ecause District of Columbia law is derived from Maryland law, decisions of the Court of Appeals of Maryland, and particularly those relating to the law of property, are accorded the most respectful consideration by our courts." *Roberts–Douglas v. Meares*, 624 A.2d 405, 419 n. 20 (D.C.1992) (citing *In re Estate of Parnell*, 275 F.Supp. 609, 610 (D.D.C.1967)). Under Maryland law, the transfer of an interest in a joint tenancy by either joint tenant "will sever the joint tenancy and cause the share conveyed to become property held as tenants in common with the other co-tenants." *Alexander, supra*, 253 A.2d at 364. We adopt the same rule here.

Nevertheless, the Estate contends, Sections 45–301 and 45–305 of the District of Columbia Code (1990 Repl.) supersede the common law rule authorizing the unilateral severance of joint tenancies. Section 45–301 states, in relevant part, that "[a]ny interest in or claim to real estate whether entitling to present or future possession and enjoyment, and whether vested or contingent, may be disposed of by deed or will, ..." Section 45–305 provides that "[a]ny person claiming title to land may convey his interest in the same, ..." The Estate argues that if we hold that Clayton Gulledge's transfer of his interest in the joint tenancy unilaterally converted the joint tenancy into a tenancy in common, then we will be permitting Clayton to convey something that he does not have, namely, an interest not restricted by Bernis' right of survivorship. To allow a joint tenant to do this, according to the Estate, would contravene the words of the statute. Ms. Watkins

---

**5.** The court in *Harrington* went on to hold that the joint tenant of the bank account at issue in that case had unilaterally severed the joint tenancy by refusing to permit the other joint tenant access to the pass book, and that she thereby terminated her own right of survivorship. 88 U.S.App.D.C. at 27, 186 F.2d at 761.

responds that Clayton Gulledge simply transferred to her his undivided one-half interest in the property, that the statute expressly authorized him to do so, and that Sections 45–301 and 45–305 did not change the common law or add any previously unavailable protection to Bernis' right of survivorship.

Statutes in derogation of the common law are subject to strict construction. *Monroe v. Foreman,* 540 A.2d 736, 739 (D.C. 1988). "[N]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." *Id.* (quoting *Dell v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 102, 107 (D.C. 1985)). The Estate has cited no statutory language or history suggesting a legislative design to alter the common law with respect to the severance of a joint tenancy. We decline to attribute to Congress an intent to change the common law in the absence of some more persuasive showing that this was the purpose of the legislation.

### III.

The Estate also argues that even if this court adopts the majority rule and recognizes Clayton Gulledge's common law right to sever the joint tenancy, the deed creating the joint tenancy constituted a contract.[6] It was a breach of that contract, according to counsel for the Estate, for Clayton to take any action—here, the transfer of his interest to Ms. Watkins—which had the effect of terminating Bernis' right of survivorship without Bernis' consent. The Estate contends that Bernis furnished valuable consideration to his father in order to secure the right of survivorship, and that the termination of joint tenancy denied Bernis the fruits of the agreement reflected in the deed. We are not persuaded.

Bernis and Clayton agreed to the creation of a joint tenancy. That was their sole agreement. The rights of a joint tenant are governed by District of Columbia law, and Bernis thus acquired the rights of a joint

tenant as defined by that law. Had the parties intended to create a right of survivorship that was not severable by either cotenant without the other's consent, they could have expressly so provided. Instead, they agreed to hold the property as joint tenants, and Bernis was bound by the legal consequences of that estate. One of these consequences was that, if Clayton transferred his interest to a third party, a tenancy in common would be created. The occurrence of that eventuality did not deny Bernis any legitimate expectation or infringe upon his rights in any way.

### IV.

For the foregoing reasons, we conclude that when Clayton Gulledge conveyed his interest to Ms. Watkins, she and Bernis Gulledge both became owners of an undivided one-half interest in the property as tenants in common. Upon Bernis' death, his estate replaced Bernis as a tenant in common with Ms. Watkins. Accordingly, the trial court correctly held that Ms. Watkins and the Estate of Bernis Gulledge are tenants in common, and that each holds an undivided half-interest in the Somerset property.

*Affirmed.*

---

**6.** The Estate does not claim that there was any contract independent of the deed creating the joint tenancy, and there was no evidence of any independent agreement. Rather, the Estate contends that the deed itself was the contract which Clayton breached.